Major Leo D. DOYLE et al.*

v.

The UNITED STATES.

Major Joe L. ADAMS et al.*

v.

The UNITED STATES.

Nos. 131–77, 275–77.

United States Court of Claims.

May 16, 1979.

---

* In case No. 131–77 the 12 plaintiffs are: Maj. Leo D. Doyle (1), Maj. Louis Gaddini (2), Maj. John D. Gardner (3), Maj. Bobby Eugene Hill (4), Maj. Eldon Craig Loe (5), Maj. Robert W. Mandelstam (6), Maj. Lois Martin (7), Maj. William J. Riddel (8), Maj. James H. Robar (9), Maj. L. D. Truitt (10), Maj. Charles M. Tryon, Jr. (11), and Maj. Kenneth P. Winchester (12).

In case No. 275–77 the 29 plaintiffs are: Maj. Joe L. Adams (1), Maj. Robert D. Ayers (2), Maj. Lyndel Barnes (3), Maj. Florencio Barrera (4), Maj. Jerry H. Brown (5), Maj. Paul Brown (6), Maj. Linwood Carr (7), Maj. Orlando Cruz-Ibarra (8), Capt. Lyle R. Daun (9), CW2 Clayton L. Dean (10), Capt. Paul T. Doherty (11), Maj. Carroll B. Durant (12), Capt. James E. Fusha (13), Maj. James E. Goldsmith (14), Capt. Daniel J. Hill (15), Maj. John Iiames (16), Maj. Jack L. Keadle (17), Capt. Arthur H. Kelley (18), Capt. Theodore J. Kmieciak (19), Maj. Robert H. Larsen (20), Maj. Robert A. Matthews (21), Maj. Vincent Meulemans (22), Maj. Cecil Mills (23), Maj. Jack Park (24), Maj. Vernon Phillips (25), Maj. Ken Polston (26), Capt. Charles P. Schell, Jr. (27), CW2 Robert E. Serafin (28), and Maj. Alfred J. Tomczyk (29).

Washington, D. C., of counsel, for plaintiffs. Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., of counsel.

George M. Beasley, III, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant. Marc J. Fink, Capt. L. Neal Ellis, Jr., and Capt. Louis R. Davis, Dept. of the Army, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS, NICHOLS, KASHIWA, KUNZIG, BENNETT and SMITH, Judges, en banc.

## ON PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, Judge:

In these consolidated cases, before us on cross-motions for summary judgment, plaintiffs, formerly commissioned officers in the United States Army Reserve (USAR) contest their release from active duty resulting from their twice having been passed over for promotion by selection boards in 1974 and 1975,[1] and contend that the decision of the Army Board for the Correction of Military Records (Correction Board) in denying their claims was arbitrary, capricious, and contrary to law. They allege that defects in the composition and decision of those boards render their separation unlawful, and they seek back pay from the dates of their release, the correction of their records, and restoration to active duty commissioned status. We conclude that plaintiffs' claims are justified *in part* and grant judgments accordingly.

I

In the Officer Personnel Act of August 7, 1947, ch. 512, 61 Stat. 795, Congress changed the prior practice under which Army officers below the grade of colonel were promoted solely on the basis of senior-

Robert M. Wright, Baltimore, Md., attorney of record, and Keith A. Rosenberg,

1. The *Adams* case originally was filed in the United States District Court for the District of Columbia. *Larsen v. Hoffman*, Civ.No. 76–0610; *Bryner v. Hoffman*, Civ.No. 76–0924.

The district court consolidated these two cases and transferred them to this court on March 30, 1977, upon concluding that it lacked jurisdiction over them. *See* 28 U.S.C. § 1406(c).

ity. The new system provided for the selective promotion of those Regular and Reserve Army officers on the basis of their qualifications for the next highest grade. The process was accomplished through selection boards (composed of at least five officers) which chose from among all of the officers eligible for promotion because they had been in a particular rank for a certain time.

The selection board procedure is used for promotion of both Regular and Reserve officers, and covers promotions to temporary as well as permanent rank.[2] In the case of selection boards convened for the recommendation of Reserve officers for promotion to permanent rank, "[s]o far as practicable, at least one-half of the members of the board must be reserve officers." 10 U.S.C. § 3362(b). An essential element of this merit promotion system is the provision that officers who have not been recommended for promotion to permanent rank by two consecutive selection boards are released from active duty. 10 U.S.C. §§ 3299(h), 3303; Army Reg.No. 624–100, ¶ 36 (July 29, 1966) (hereinafter Army regulations cited as AR).

Separate selection boards consider promotions to permanent rank for Regular and Reserve officers. In the case of promotions to temporary rank, however, the same selection board may consider both Regular and Reserve officers and select the total number authorized for promotion from within this combined group. Statute requires that whenever a board considers the promotion of Reserve officers, such board "shall include an appropriate number of Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense." 10

U.S.C. § 266(a). Regulation requires that Reserve officers, twice passed over for promotion to the same temporary rank, be released from active duty or retired if appropriate.[3]

In the case of temporary promotions (unlike permanent ones), the officers whom the board considers are divided into two categories: those in the primary zone and those in the secondary zone. An officer's placement in one or the other zone depends upon the length of time he has served in the rank held. Officers in the secondary zone have been in rank a shorter time than those in the primary zone. The officers in the primary zone are viewed as the group that can provide sufficient officers to meet the Army's need in the next year for officers in the higher grade. The secondary zone, on the other hand, is designed to enable the Army to advance younger and more capable officers ahead of both their contemporaries and those in the primary zone. *See* AR 624–100, ¶¶ 2*i*, 2*j*, 14.

The Secretary each year sets the maximum number of officers the selection board may promote, and regulations specify the maximum percentage that may be selected from the secondary zone. AR 624–100, ¶ 23 *b*. Since the officers in the secondary zone are junior in rank to those in the primary zone, those selected from the secondary zone must be better qualified than the officers in the primary zone who were not selected. Because of the limit on the total number of officers to be promoted, each selection from the secondary zone precludes a selection from the primary zone.

The nonselection of an officer in the secondary zone, unlike that of an officer in the primary zone, does not constitute a passover for promotion for purposes of the mandato-

---

**2.** All officers have a permanent rank. Officers on active duty may be promoted to a higher temporary rank than their permanent one. An officer temporarily promoted retains his permanent rank.

**3.** Congress specified the selection board procedure and release from active duty or retirement after two passovers only in the case of promotions to permanent rank. Congress left it to the Secretary to determine the procedures for

promotion of officers to temporary rank, 10 U.S.C. § 3442(c), and the Secretary provided by regulation that selection boards would also handle temporary promotions, AR 624–100. Under the authority of 10 U.S.C. § 681, the Secretary provided by regulation that in the case of Reserve officers two passovers for promotion to temporary rank would result in release or retirement. AR 635–100, ¶ 3–65*a* (Jan. 14, 1975).

ry separation after two nonselections. AR 624–100, ¶ 25. At some point, however, an officer in the secondary zone who has not been promoted will be transferred to the primary zone.

Proceedings before the selection board, which are secret, involve a review of the written records of the officers. No officer or his representative may appear before the board, although an officer may write the board concerning any matters believed important to a proper consideration of his record. 10 U.S.C. §§ 3297(e), 3362(f); AR 624–100, ¶¶ 16, 24; AR 135–155, ¶ 3–10 (Aug. 30, 1974). Because of the secrecy of selection board proceedings, there is some uncertainty concerning the mechanics of the selection process. Usually, each member of the board evaluates each officer's file independently and without discussing it with other members, and then gives the officer a numerical rating; the officers with the highest scores are selected. If, at the point where the limit on the number of promotions is reached, there are more officers with the same score than can be promoted, the board members reevaluate those officers together with those whose scores are immediately above and below. In such reevaluation they may discuss individual officers. *See* Ford, *Officer Selection Boards and Due Process of Law*, 70 Mil.L.Rev. 137, 148–51 (1975).

The regulations require that the boards recommend for promotion to the grades of major through colonel and chief warrant officer those officers determined to be "best qualified" for promotion, *i. e.*, those to whom the selection board has given the highest rating.

Two administrative procedures are available for officers who wish to challenge their nonpromotion by a selection board. If the Army concludes that the officer's record before the selection board contained material error, a standby advisory board will be convened. AR 624–100, ¶ 18*b*; AR 135–155, ¶ 3–14*b*. Correction boards sometimes refer cases to standby boards and review their determinations. A standby board compares an officer's corrected record with randomly selected records of other officers, some of whom the selection board promoted and others it rejected. If, upon such reconsideration, the standby advisory board gives the rejected officer a rating high enough to equal the ratings of the officers before it whom the selection board has selected, he is promoted.

A nonselected officer also may seek relief from the Army Board for the Correction of Military Records. That board implements 10 U.S.C. § 1552, which authorizes the Secretary, acting through a board of civilians, to change any serviceman's military record to correct an error or remove an injustice. Application to the board does not, however, stay any other proceedings which are pending against the applicant. AR 15–185, ¶ 9 (June 4, 1974). Although in certain circumstances the board may take final action on behalf of the Secretary, *see* Ford, *supra*, 70 Mil.L.Rev. at 154, in most cases the board merely makes recommendations to the Secretary, who has final decisional authority.

In 1974 and 1975 the plaintiffs were Reserve officers serving on active duty in the grades of major, captain, and chief warrant officer, CW2. Because of the time they had been in rank, they were in the primary zone for promotion. This meant that if they were twice not promoted for the same temporary rank they would be released from active duty and retired if appropriate.

Plaintiffs were considered by 1974 and 1975 selection boards (the size of which ranged from six to 15 members) but were not among those selected by those boards for temporary promotion. As a result, they were notified that they would be released from active duty 90 days after the date of notification.[4] None of the 1974 and 1975 boards had any Reserve members.

The 1974 selection boards for the three grades here involved selected for promotion 1,072 of the 1,944 officers in the primary

---

4. Three of the plaintiffs had completed more than 18 years of active duty at the time of the second nonselection and would be retained on active duty until they had completed 20 years of service and were eligible to retire. AR 635–100, ¶ 3–65*d*.

zone they had considered for promotion (55.1 percent). For the 1975 boards, the figures were 1,487 of the 2,901 officers considered (51.3 percent).

Subsequent to the decision of the selection boards, the plaintiffs discovered that the boards had not included any Reserve officers. In the latter part of 1975, plaintiffs filed applications with the Correction Board to set aside their nonselection. They contended that (1) the lack of Reserve members on the selection boards required invalidation of the boards' decisions denying them promotion, and (2) that the boards also had misapplied the regulations governing the standards for promotion. The plaintiffs informed the Secretary of the Army of the defect in the composition of the selection boards, but the Secretary refused to retain the plaintiffs on active duty until the Correction Board decided their cases. With a few exceptions,[5] plaintiffs and other passed-over officers were discharged from active duty.

The Correction Board concluded that, although the omission of Reserve officers from the 1974 and 1975 selection boards "was not done in an arbitrary or capricious manner or with malicious intent to harm or prejudice the applicants' [plaintiffs'] promotion chances as Reservists," nevertheless the absence of Reservists from those boards "may have deprived them [plaintiffs] of consideration in a manner intended; that although the applicants have not shown that they have been harmed because there was no Reserve officer on the board, * * [that fact] raises some doubt as to whether the applicants were accorded proper consideration for promotion under the 1974 and 1975 promotion criterion." The Correction Board further concluded that "the failure of the Department to appoint an appropriate number of Reserve officers as members of the 1974 and 1975 selection boards has resulted in an injustice to the applicants in that it has deprived them of consideration for promotion by selection boards containing Reserve officers." The Correction Board rejected plaintiffs' contention that the selection boards had misapplied the regulations.

The Correction Board recommended that new selection boards with an appropriate number of Reserve members be convened to reconsider all officers from the primary zones who were eligible for promotion to the temporary grades of lieutenant colonel, major, and chief warrant officer in 1974 and 1975; that the instructions to the original 1974 and 1975 selection boards be utilized "as the criterion for consideration and selection" by the new boards; that the military records of all eligible officers be reconstituted as they were in 1974 and 1975, without any reference to action by the original selection boards or to any subsequent service; that the new boards for 1974 and 1975 consider all the officers whom the original boards for each of those years had considered and report to the Correction Board for appropriate action the officers it recommended for promotion and those it did not select; and that no officers whom the original selection boards had selected for promotion be denied that advancement.

In January 1976, the Secretary of the Army approved the Correction Board's findings and conclusions and directed that its recommendations be carried out. Shortly thereafter the Department announced that officers already separated following their nonselection by the original selection boards would not be recalled to active duty during this procedure, but that officers who had not been separated as of the date of the Secretary's approval of the Correction Board's decision would remain on active duty until the reconstituted boards had completed their proceedings. Since the plaintiffs had been released from active duty prior to the Secretary's action, they were not recalled.

The reconstituted 1974 and 1975 selection boards convened from May 1976 through August 1976. The reconstituted boards

---

5. *See* note 4 *supra.* Several passed-over officers had been temporarily retained on active duty for various reasons. These officers' active duty status was extended after the Secretary adopted the recommendation of the Correction Board.

considered de novo each officer in the primary zone whom the original boards had considered, including those whom the boards had selected. Except in one respect,[6] the reconstituted boards followed the same procedures and standards as the original boards, and each board that considered Reserve officers had one or more Reserve members.

Although the reconstituted boards recommended promotion of some officers who were not selected by the original boards, none of the plaintiffs was among those recommended for promotion by either of the boards reconstituted for 1974 or 1975. Upon reviewing the recommendations of the reconstituted boards with respect to those officers, the Correction Board concluded it was "reasonable to presume that had * * * [these officers] been considered [initially] by properly constituted boards, * * * [they] would not have been selected for promotion" and that the plaintiffs' nonselection for promotion under the 1974 and 1975 "selection criteria was neither erroneous nor unjust." The board reaffirmed its previous rejection of plaintiffs' other objections to their nonselection. It concluded that the plaintiffs were not entitled to any relief. In November 1976, the Assistant Secretary of the Army for Manpower and Reserve Affairs approved the Correction Board's findings, conclusions, and recommendations.

## II

■ We hold, as the defendant concedes, that the original 1974 and 1975 selection boards were improperly constituted because they did not include any Reserve officers as members. Section 266, title 10, of the United States Code, requires that "[e]ach board convened for the * * * promotion * * of Reserves shall include an appropriate number of Reserves" as the Secretary of

the Army prescribes under standards and policies prescribed by the Secretary of Defense.[7] Department of Defense Instruction No. 1205.4, dated June 23, 1959, provides that the members of boards for the promotion of Reservists shall include "to the fullest practicable extent, a fair and adequate representation" of Reserve members. AR 624–100, ¶ 16*b* (5), provides that where non-Regular officers are being considered, the selection board will, "where practicable," include at least one Reserve officer.

As the case comes to us, there is no indication or even claim that Reserve officers were not included on the original 1974 and 1975 boards because they were unavailable or their appointment was otherwise not practicable. The statutory command is unequivocal that the boards considering Reservists for promotion "shall include an appropriate number of Reserves." The absence of Reserve officers from these boards, contrary to the statutory requirement and the implementing directive of the Secretary, constituted a legal error that the Correction Board was authorized to correct.

The plaintiffs contend that once we determine that the absence of Reservists on the board constituted a legal error, that is the end of the matter. According to the plaintiffs, decisions of the Supreme Court and of this court establish that a defect in the composition of a military board or tribunal automatically invalidates the entire proceeding and requires a new one. They assert that when the Secretary concluded that the original selection boards had been improperly constituted he was required to treat their proceedings as a nullity, to reinstate the plaintiffs on active duty at the rank they held when they were released, and to begin the entire promotion procedures anew. In short, plaintiffs contend that there is no room for the doctrine of

---

6. The reconstituted boards, unlike the original boards, did not consider for promotion any officer in the secondary zone.

7. The Senate report on the statute explained: "The term 'appropriate numbers' rather than a fixed ratio is used, since the same board may be considering both Regular and Reserve per-

sonnel. In such case the proportion of Reserve officers on the board should be roughly equal to the proportion of Reserves being considered." S.Rep. No. 1795, 82d Cong., 2d Sess., reprinted in [1952] U.S.Code Cong. & Admin. News 2005, 2042.

harmless error in this case, and that they are now entitled to back pay and restoration to active duty commissioned status.

■ We acknowledge that the doctrine of harmless error has an honored place in jurisprudence. Indeed, it has been applied in this court and even urged in circumstances where some have thought it should have been applied, but it was not. *Ryder v. United States*, 585 F.2d 482, 489, 218 Ct.Cl. ——, —— (1978). However, in the circumstances of the present case, as will be demonstrated, it has no proper place. We conclude, however, that the Secretary's and Correction Board's handling of the problem created by the widespread violations of the statute and regulation in the composition of the 1974 and 1975 selection boards was, in part, a reasonable and permissible attempt to deal with the serious situation those violations posed for the military. We fault the Correction Board only for its failure to grant these plaintiffs the full and complete relief to which they were legally entitled because of the serious violation of their legal rights.

This is not the first case in which this court has had to consider what effect defective composition of a board had on that board's action. *See Ricker v. United States*, 396 F.2d 454, 184 Ct.Cl. 402 (1968); *Henderson v. United States*, 175 Ct.Cl. 690 (1966), *cert. denied*, 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967). In *Henderson*, a faculty board (the Graham Board) eliminated Henderson from a pilot training program on the basis of his flying deficiencies. The governing Air Force regulations provided that a quorum of the board was three voting members and required that voting members be senior to the person being investigated. The regulation provided that this latter requirement could not be waived. The board had only three voting members, and one of the members (Lt. John L. Krill) was junior in rank to Henderson. The court held that "the presence of Krill on the Board was a defect that could not be, and was not, effectively waived; and that the Board did not meet the requirement that a quorum constituted of no less than three

eligible voting members be present at all sessions." *Henderson v. United States, supra*, 175 Ct.Cl. at 701. The court stated further:

* * * despite the fact that the record of the proceedings of the Board clearly shows that its findings and recommendations were fully justified, it must be held that the Graham Board was improperly constituted. It follows that under the Air Force's own regulations, *supra*, the Graham Board was without jurisdiction to hear plaintiff's case and its proceedings void *ab initio*. [*Id.*]

In *Ricker*, the plaintiffs were retired as Regular Navy captains when a continuation board failed to recommend them for continuation on the active list. By statute, 10 U.S.C. § 5702(f), no member could serve on two successive boards convened to consider promotion or continuation of officers of the same rank. One of the three members of the board that declined to recommend the plaintiffs' continuation on active duty had been a member of the prior board that considered continuation on active duty of officers of the same rank.

The court held that the board "was illegally constituted" "in direct violation of the statutory mandate" and that the proceedings were therefore "fatally defective." *Ricker v. United States, supra*, 396 F.2d at 455–57, 184 Ct.Cl. at 405–08. It rejected on three grounds the defendant's argument that the plaintiffs were not prejudiced by the defect in the membership of the board because the plaintiffs had appeared only once before a continuation board: (1) the ban against an officer sitting on successive boards was an attempt "to prevent a general form of prejudice" by "lessen[ing] the probability of cliques becoming established and perpetuated"; (2) *Henderson* held that the illegally constituted board "rendered the proceedings fatally defective"; and (3) since the agency violated not its own regulations but an Act of Congress, "[i]t follows, *a fortiori*, that the separations were illegal." 396 F.2d at 456–57, 184 Ct.Cl. at 406–07.

In neither *Henderson* nor *Ricker* did the court find that it was possible to sustain the

compositionally defective board's action by proof of the harmlessness of the error. In *Henderson*, the unwaivable regulatory requirement that a board passing on an officer could not be composed of an officer junior in rank to the officer under consideration was aimed at affording rank its proper dignity and at preventing a general form of prejudice officers might consciously or unconsciously entertain toward their superiors. In *Ricker*, the statutory requirement that a particular officer not sit on two consecutive boards for the same rank also was aimed at attempting to prevent a general form of prejudice. Both the regulation and the statute were the result of a considered decision as to the fairness of a particular process.

◼ The first proposition to underscore in this case is that the Army's error in failing to have Reservists on the original selection boards was not merely technical, formal, or trivial, but serious, substantial, and directly related to the purpose and functioning of selection boards. Congress was concerned that the military establishments (with their significant sector of Regular officers) not discriminate against Reserves.[8] That is obviously why 10 U.S.C. § 266(a) requires that certain boards which consider Reserves "shall include an appropriate number of Reserves * * *." Reserve members of the selection boards were to be there to minimize the chance that conscious or unconscious bias against Reserves, as such, would enter into the selection process. Like *Henderson* and *Ricker*, the requirement is an important component in ensuring the fairness of the process. Such a requirement confers the right on officers to be considered by a proper board.

◼ It has been suggested that the case differs from *Henderson* because the Army itself has recognized the less rigid character of this requirement by providing that Reservists are to be assigned to those boards only where practicable. We see nothing to

support this dissolution of the statutory requirement. The statute is unequivocal that the boards *shall* include an appropriate number of Reserves. There is absolutely no indication that this command is unimportant or waivable at the discretion of the Secretary.

Defendant vigorously argues that our decisions in *Henderson* and *Ricker* are incorrect as a matter of law and asks us to overrule them. It asserts that, under present law, even in the case of constitutional errors, an employer has the right to prove the harmlessness of the error. It notes that the errors herein were statutory violations, not constitutional violations and that officers do not have a protected property interest in continued employment under the fifth amendment. Thus, defendant's argument goes, plaintiffs are certainly not entitled to more protection for statutory rights than is afforded constitutionally protected rights. Defendant further urges us to adopt the holdings of other courts which have followed the doctrine of harmless error in the military pay field.

We do not believe that defendant's general propositions affect our holdings in *Henderson* and *Ricker*. Defendant places principal reliance on the Supreme Court's decision in *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), where a school teacher's exercise of his substantive constitutional right to free speech was found to be a substantial or motivating factor in a school board's decision not to rehire him. The Court ruled that, unless there was a direct causal connection between the teacher's exercise of his constitutional rights and the decision not to rehire him, the decision to rehire would not "amount to a constitutional violation justifying remedial action." *Id.* at 285, 97 S.Ct. at 575. The Court placed on the defending party the burden of showing that the decision would have been the same even in the absence of the protected conduct.

---

**8.** 10 U.S.C. § 277 declares:

"Laws applying to both Regulars and Reserves shall be administered without discrimination—

"(1) among Regulars;
"(2) among Reserves; and
"(3) between Regulars and Reserves."

The holding in *Mt. Healthy*, applying the "harmless error" test to substantive constitutional rights, is analogous to our recent decisions in the military pay area in *Sanders v. United States*, 594 F.2d 804 (Ct.Cl. 1979), and *Skinner v. United States*, 594 F.2d 824 (Ct.Cl.1979). In those cases, we held that officers' separations based on two passovers for permanent promotion were illegal where the selection boards had not considered them on the basis of a record which portrayed their service careers on "a fair and equitable basis" as the statutes, 10 U.S.C. §§ 3442(c), 8442(c), required. *Sanders v. United States, supra*, 594 F.2d at 813. Though we did not adopt *Mt. Healthy's* allocation of burdens of proof for military pay cases, we did implicitly follow *Mt. Healthy* in concluding that the doctrine of "harmless error" applied and that the plaintiffs were not entitled to recover if there were no relation between the inaccuracy in their records and the decision not to promote them. Of course, we did find such a nexus existed in those cases.

The error in this case, however, is not a violation of the plaintiffs' substantive rights but rather a violation of the plaintiffs' rights to fair procedure or process. We are not unmindful of the fact that the due process protections of the fifth amendment have been sparingly extended to government employees, but that problem is immaterial to this case. The error is the violation of procedures instituted by statute and regulation, and, though federal employees *may* not be entitled to any procedure not established by Congress or agency, we have always held that they are entitled to such procedure that has been so provided.

Since this case presents the issue of procedural errors in the decision-making process of a selection board, we find those cases dealing with the violation of constitutional procedural rights to be more analogous. The Supreme Court has recognized that even in the case of constitutional error occurring in a criminal trial, not every such error requires "the automatic reversal of the conviction"; a conviction will be upheld if the "federal constitutional error * * * was harmless beyond a reasonable doubt."

*Chapman v. California*, 386 U.S. 18, 22, 24, 87 S.Ct. 824, 827, 828, 17 L.Ed.2d 705 (1967). *See, e. g., Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) (violation of sixth amendment right of confrontation); *United States v. Parker*, 549 F.2d 1217, 1221 (9th Cir. 1977), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977) (prosecutor's comment on defendant's failure to testify, in violation of fifth amendment).

Some constitutional rights, however, are "so basic to a fair trial that their infraction can never be treated as harmless error * * *." *Chapman v. California, supra*, 386 U.S. at 23, 87 S.Ct. at 827 (coerced confession, right to counsel, impartial judge). These include cases in which compositional defects are found to exist in respect to juries. *See, e. g., Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). Two justifications for the rule of automatic reversal are generally advanced. First, some errors are so inimical to judicial or fair process that their violation cannot be tolerated under any circumstances. Application of the test of harmless error would result in the dilution of the afforded protection. Second, a court, in the case of some errors, such as the improper composition of a jury or the bias of a judge, "has no way of evaluating the effect of the error on the judgment in the dark of what might have been but never was, * * *." R. J. Traynor, The Riddle of Harmless Error 66 (1970).

■ Though the proceeding involved herein is evaluational, not accusatory, and the error statutory, not constitutional, we do not for these reasons believe that these plaintiffs are entitled to any less protection. Decisions of selection boards have important consequences for those considered. They are either promoted to higher rank and pay or are terminated and lose their employment and pay. The statute explicitly commands that selection boards shall be composed of an appropriate number of Reserve officers so that Reserve officers will not be prejudiced and so that Congress'

purpose that the nation is protected by a military composed of those officers best qualified regardless of their status as Regular or Reserve officers, is carried out. We believe that Congress' purpose would be thwarted unless a Secretary is aware that this is a statutory requirement that cannot be waived.

■ Moreover, we believe that the second justification for the automatic reversal rule, that it is not possible for a reviewing body to determine what effect the error had on the judgment of the original proceeding, forces us to conclude that the doctrine of harmless error cannot be applied to this type of procedural error. Recommendations for promotion are the product of subjective, secret evaluations of officers by officers. AR 135–100, ¶ 18. The task imposed on selection board members is to determine within the framework of their own experience and special insights and subject to the standards prescribed by the Secretary, what officers among the many qualified are "best qualified" to serve in a promoted capacity. Courts are not qualified nor is it desirable for them to delve into the selection boards' exercise of discretion. Judgment was exercised by the selection boards in the absence of the judgment of the appropriate number of Reserve officers required by statute. In no way can the proper influence of Reserve officers be injected into the original process, after the fact, in order to determine the effect it might have had on the judgment of the board. Thus, the procedural violation penetrates to the heart of the process Congress deemed necessary for fair judgment in selecting officers for promotion, which is presumed prejudicial in accordance with the policy of the statute. The defective process can be corrected, however, by giving the adversely affected officers the opportunity to be promoted in strict compliance with the law. But this new opportunity does not demonstrate that the error was harmless nor render the original error harmless as to those officers passed over by the new procedure; instead, it is simply the best remedy that legal ingenuity can provide.

■ Thus, though new procedures were provided here, we reject defendant's contention that the reconstituted selection boards were merely an evidentiary proceeding into the question of whether the error was prejudicial and that the results of the new procedure demonstrate the harmlessness of the error as to the plaintiffs. Nor is this contention strictly borne out by the facts. The reconstituted selection boards were a completely new process, recommended by the Correction Board, because the plaintiffs were not considered for promotion in the manner intended by the statute and regulation. The Correction Board could not determine, based on the evidence then before it, that the error was not prejudicial.[9] The Correction Board, therefore, found that this was an injustice.[10] The Secretary, on the recommendation of the Correction Board, ordered that new selection boards be set up and that appropriate corrective action be taken by the Correction Board upon the recommendation of the reconstituted selection boards. It is wrong to conclude that a completely new process, which renders a new decision with important consequences, is an evidentiary hearing into the question of prejudice; it is, rather, what it obviously appears to be—a remedy to correct an admitted mistake. Thus, the Correction Board's surprising contention, when it rejected plaintiffs' claims, that the compositional defect was harmless, cannot stand.

Defendant has cited cases in the military pay area which have accepted a new, subsequent process as proof of the harmlessness of error in the selection process. Several of these cases deal with the same procedural defect complained of here. *See Dilley v.*

---

**9.** Defendant also submitted affidavits from some of the members of the original boards to the effect that each officer was considered fairly for promotion. We do not accept these self-serving statements as probative evidence of the lack of prejudice in the original proceedings.

**10.** We note, however, that this was not simply an injustice, but serious legal error.

*Alexander,* 440 F.Supp. 375 (D.D.C.1977), *rev'd,* No. 77–1789 (D.C. Cir. Feb. 26, 1979); *Fuller v. Alexander,* 440 F.Supp. 380 (D.D.C.1977); *Whitehead v. Alexander,* 439 F.Supp. 910 (D.D.C.1977); *Gober v. Hoffman,* Civ.No.77–17–COL (M.D.Ga. Aug. 23, 1977). Since oral argument was heard in this case, *Dilley* was reversed by the United States Court of Appeals for the District of Columbia which concluded that the error herein required automatic reversal. We agree with the *approach* taken by the court of appeals in *Dilley* for the reasons heretofore stated and do not accept that taken in *Gober* (in effect, the only remaining precedent for the contrary position).

In *Coughlin v. Alexander,* 446 F.Supp. 1024 (D.D.C.), *aff'd without opinion,* 191 U.S.App.D.C. 212, 589 F.2d 1115 (1978), an officer had been passed over by a temporary selection board which was illegally constituted because it included a member who was junior in rank to the plaintiff. The district court found that the error was harmless because plaintiff was passed over by several subsequent properly constituted boards. While the opinion is not free from ambiguity on this point, it appears that plaintiff's passover by the defectively constituted board was not one of the two passovers upon which separation was based. In our case the error was a component in the passover which resulted in termination, whereas in *Coughlin* the error resulted in the plaintiff's record showing that he had been passed over for promotion when that passover was ineffective. Proper analysis of that plaintiff's case involves the effect the error had on the later passovers with actual pay consequences, and this is a question of material error in a serviceman's record before a board subject to harmless error doctrine. *See Sanders v. United States, supra.* To the extent *Coughlin* differs from this approach and holds that the subsequent process itself demonstrates the harmlessness of the error, this court does not accept it. *See also Dilley v. Alexander, supra,* where the Court of Appeals for the District of Columbia found the presence in officers' records of an illegal passover vitia-

ted a subsequent passover by a properly constituted selection board.

The third type of case is demonstrated by *Knehans v. Callaway,* 403 F.Supp. 290 (D.D.C.1975) *aff'd,* 184 U.S.App.D.C. 420, 566 F.2d 312 (1977), where the courts accepted the recommendation of a standby advisory board as evidence of the harmlessness of the error in the original proceeding. In *Knehans,* the error alleged was a material factual error in the officer's record before a selection board, which is subject to the harmless error standard. *See Sanders v. United States, supra.* Under regulations, standby advisory boards are authorized only upon the allegation of material error or injustice in an officer's record before a selection board and not for error in the selection process itself. These standby boards differ from reconstituted boards in that they do not attempt to redo the process completely, but instead attempt to compare the officer's correct record with the results of the selection board when the officer was originally considered. We note and agree, however, with the general approach taken by the courts in *Knehans* which made an evaluation of harm without depending on the decision of the standby advisory board as a litmus paper test of the harmlessness of the error. A court must review the board's decision to determine whether it is supported by the evidence. Thus, this case does not support defendant's position.

Under statutes and regulations governing military personnel, an officer is separated or retired when he has been passed over by two selection boards for the same rank. We reaffirm our holding in *Sanders v. United States, supra,* that an officer cannot be terminated under the two-passover rule unless he has had two fair chances at promotion as required by statute and regulation. This includes, in this case, consideration by boards which are constituted squarely in accordance with statute and regulation. This we deem to be an officer's basic right. Where the error is the violation of a provision designed to protect against a general form of prejudice, and there is no way of determining whether

actual prejudice was involved in highly subjective and secret decision-making, we conclude that this right was not had. Thus, we hold that plaintiffs' separations, predicated on two passovers by illegally constituted boards, were invalid. These plaintiffs were entitled to their position, rank, and pay until they were terminated from active duty under proper authority.

This conclusion, however, does not mean that these plaintiffs are entitled to recover to the full extent of their claims. We must examine the question of whether the plaintiffs were properly separated or retired under authority of the regulation upon two passovers by the reconstituted selection boards.

■ 10 U.S.C. § 297 grants to the Secretary the authority to set up selection boards to recommend promotion. 10 U.S.C. § 1552 grants broad powers to the Secretary, acting through correction boards, to correct errors and injustices and to grant appropriate relief. The parties admit, and we conclude, that on the basis of these extensive powers the Secretary had the power to set up new selection boards, out of sequence, to *correct* or *remedy* an admittedly major legal error.

■ Defendant has taken the extreme position that the reconstituted boards were merely an evidentiary proceeding into the question of harmless error and has failed to consider any other. We feel that this uncompromising attitude jeopardizes the best interests of the Government. Nor do we believe that the facts support defendant's narrow reading of them.

The Secretary, upon the recommendation of the Correction Board, ordered the Chief of Staff to set up new, properly constituted selection boards and required the appropriate correction of the officers' records on the basis of the new boards' recommendations. The character of the process was substantially different from that undertaken by standby advisory boards which make a limited investigation into the question of prejudice in an original proceeding. Here, however, the Secretary ordered that the defective process be redone. We conclude that the label these boards wore is of no importance, the only question being whether plaintiffs received full and fair consideration as required by law.

■ With one exception noted below, the reconstituted boards followed the identical standards and procedures the original boards had used. The reconstituted boards considered de novo all of the officers in the primary zone the original boards had considered, including both those selected and those rejected for promotion. Each officer's record was reconstituted as it had been in 1974 and 1975. The reconstituted boards utilized the same instructions and guidelines the Secretary had given to the original boards. Any officer that the reconstituted board had passed over was considered by the second reconstituted board. Each reconstituted board, unlike the original boards, had Reserve membership. The reconstituted boards operated in accordance with all applicable statutes and regulations.[11]

The record does not show how many Reserve officers not selected by the original boards were selected by the reconstituted boards. There is no question, however, that the number was substantial.[12] The Correc-

---

11. Plaintiffs contend that the reconstituted boards could not serve as the basis for separation because such separation would violate AR 635–100, ¶ 3–65a (1), which requires that 9 months or more elapse between adjournment dates of temporary selection boards. We do not believe that the regulation was violated because the reconstituted boards had acted on the basis of the records presented to the original boards which had satisfied this requirement.

12. The plaintiffs in their briefs submitted evidence that "approximately 1203 officers" not originally selected were selected by the reconstituted boards. With respect to the three categories of officers involved in these cases, the plaintiffs' figures indicate that the reconstituted 1974 board selected a minimum of 404 officers whom the original 1974 and 1975 boards had passed over. The defendant's briefs state that the number of officers the original boards had not selected but whom the

tion Board acted upon the reconstituted selection boards' recommendations for promotion. All of these factors demonstrate that the Secretary made a good faith effort to give all primary zone officers the fair opportunity to be promoted which had not been afforded them by the original selection boards.

■ Plaintiffs contend, however, that the reconstituted selection boards did not give them a fair opportunity to be promoted because the reconstituted boards did not completely redo the job of the defective boards in that they did not reconsider officers from the secondary zone. Fifteen percent of the captains and majors and 7½ percent of the chief warrant officers the original selection boards had recommended for promotion were from the secondary zone. This was the maximum permissible number under the regulations that could have been selected from the secondary zone. As noted, this reduced the number of officers selected from the primary zone by the original boards.

Since the reconstituted boards were instructed to and did consider only officers from the primary zone, the total number of officers those boards were to select was reduced by the number of secondary zone officers the original boards had selected. Plaintiffs allege that this change in the number of officers the reconstituted boards could select improperly impinged upon the discretion of selection boards to select less than the maximum permissible number from the secondary zone, and thereby improperly reduced the number of places for which the plaintiffs were competing, and that this disparity between the original and reconstituted boards meant that they did not have a fair opportunity to be promoted.

The facts are unclear and subject to varying interpretations as to the question whether the Secretary impinged upon the discretion of the original selection boards by instructing them to select the maximum complement of secondary zone officers. The Correction Board found that the Secretary did not restrict the discretion of the original boards to select less than the maximum permissible number of secondary zone officers. Pursuant to this finding, since there is no doubt that the reconstituted boards did not have this discretion, there would have been a difference in the manner in which these plaintiffs were reconsidered. There is evidence that at the minimum, however, the Secretary strongly implied by his conduct that he thought the maximum number was the proper number of secondary zone officers who should be promoted by the original boards.[13] As a practical matter, it is highly unlikely that the reconstituted boards would have selected less than the maximum number of secondary zone officers. But we decline to rest our decision on this conclusion.

Plaintiffs, upon learning of the alleged defects in the 1974 and 1975 selection boards, notified the Secretary and applied to the Correction Board for the correction of their records, showing that they had been promoted by the defective boards[14] or at the minimum that they be retained on active duty until they had the opportunity to be considered by proper selection boards. Based upon the conclusion that there was a compositional error, the Correction Board recommended, and the Secretary adopted, a plan to give plaintiffs an opportunity to be reconsidered for promotion, and, if recommended for promotion, the correction of

reconstituted boards had selected were 146 in 1974 and 123 in 1975. Neither side explains these figures any further nor breaks them down between Reservists and Regulars.

13. The Secretary had abolished the original 1974 captain-to-major temporary selection board before it made its recommendations, because he concluded the low percentage of promotions from the secondary zone that the board was about to announce did not comply with his original instructions to it in that there

were many secondary zone officers not selected who were much more highly qualified than primary zone officers who were being selected. The new 1974 captain-to-major selection board (which is one of the "original boards" in this action) then selected the maximum number of secondary zone officers, as did all other original boards involved in this action.

14. Plaintiffs' claims for promotion are not before the court.

their records to show that they had been promoted by the original boards.

Since only officers in the primary zone had applied for correction and since only these officers were in the situation that passovers resulted in release from active duty, it is understandable that the Correction Board addressed its remedy only to these individuals. We do not intimate by the above our opinion as to the correctness of this decision as it applied to secondary zone officers. What we find determinative is that plaintiffs were aware from the Correction Board's decision that *only officers in the primary zone would be reconsidered.* No objection was made to the Correction Board or to the courts concerning the manner of reconsideration until the reconstituted selection boards had not recommended the selection of these officers. Indeed, the plaintiffs in the *Adams* case (represented by the same counsel as in *Doyle*) first filed their petition in district court (before transfer) on April 13, 1976, after the decision of the Correction Board but before any action was taken by the reconstituted selection boards. In their petitions, the plaintiffs pled the decision of the Correction Board and attacked it solely on the grounds that the Correction Board had failed to grant them the remedy of reinstatement to their prior rank, back pay, and correction of their records to show that they had not been passed over by the original 1974 and 1975 selection boards. We are convinced that at that time plaintiffs were well satisfied with that part of the remedy which gave them the opportunity to be reconsidered by new selection boards for promotion retroactive to the action of the original selection boards. We conclude that under these circumstances plaintiffs have waived any objection to the manner in which the new boards considered only primary zone officers when they were well aware of this fact and chose not to raise the objection until after they found out they were not recommended for promotion by the reconstituted boards.

 It should be kept in mind that 10 U.S.C. § 1552 grants to the Secretary,

acting through corrections boards, broad powers to correct and remedy errors and injustices. It is clear that the statute only confers on the Secretary the power to correct records in favor of a serviceman and never against him. Thus, this power does not permit the Secretary to correct these officers' records to show, on the basis of the reconstituted boards' recommendations, that they were passed over by boards with proper Reserve officer membership and, hence, legally separated under the two-passover rule when in fact the original 1974 and 1975 boards did not have proper Reserve officer membership and the officers were not legally separated. Therefore, correction cannot retroactively deprive these officers of the pay and rank to which they were entitled. On the other hand, Congress has conferred on the Secretaries the power to grant remedies exceeding those exercised by us. For example, if the plaintiffs in this case had bypassed the Correction Board and brought the action originally in this court, while we could order back pay and reinstatement and consideration for promotion in the normal course, we could not have ordered promotion or made any favorable decision of a selection board retroactive. The Secretary could, however, and did, make reconstituted selection boards' recommendations for promotion retroactive.

 It has long been part of our law that a party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it. *See Haynes v. United States*, 418 F.2d 1380, 190 Ct.Cl. 9 (1969). While we have never held that a petition to the Correction Board is a mandatory administrative remedy, we have held that once a party has availed himself of this administrative process he is bound by it unless the decision is unsupported by substantial evidence, arbitrary, capricious, or contrary to law. *Sanders v. United States, supra*, 594 F.2d at 811. A party is not entitled to many independent chances to prevail, and his voluntary choice will often determine the extent of a court's review. Decision-making bodies normally have the power to correct their own errors,

*Bookman v. United States*, 453 F.2d 1263, 197 Ct.Cl. 108 (1972), and the Correction Board is no exception. The doctrine that requires that known objections be made to the agency is to insure "that administrative agencies are thereby afforded an opportunity to make adjustments and correct errors on the administrative level, thus permitting the government to mitigate or avoid large damage claims that might otherwise be created (*United States v. Holpuch Co.*, 328 U.S. 234, 239, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946))." *Blackmar v. United States*, 354 F.2d 340, 347, 173 Ct.Cl. 1035, 1045 (1965). Consonant with this doctrine, plaintiffs are required to voice their objections in such a way that the Secretary or Correction Board is aware of problems, well known to plaintiffs, in the manner a remedy is effectuated before it is effectuated. Plaintiffs could not stand on their objections waiting to see if they were retroactively promoted by the new boards and only upon the new boards' adverse recommendations, contend that the remedy did not achieve its intended result. Plaintiffs cannot have their cake and eat it too. Any other rule would not give proper regard to the broad powers of the agency to correct errors, would be wasteful of the good faith effort and expense undertaken by the Secretary in this case, and would not accord with principles of justice.[15]

Therefore, we hold that these plaintiffs did receive full and fair consideration by the reconstituted selection boards. When this was done to remedy the error, the affected officers had everything to which they were thereafter legally entitled, including promotion if so recommended.

■ This opinion is not to be read as countenancing just any easy process for the

Secretary to get around past mistakes. What is crucial to our holding is that the Secretary set up new or fully reconstituted selection boards. Standby or relook boards that do not undertake the exhaustive re-evaluation that a normal, regular selection board does do not provide the full and complete opportunity to be fairly and equitably considered for promotion mandated by law.

### III

Plaintiffs assert that the original 1974 and 1975 selection board proceedings were invalid for the additional reason that those boards violated Army regulations in two respects. They also argue that since the reconstituted boards committed the same errors, the decisions of the latter were also invalid. The argument fails because its major premise is unsound: the original boards did not violate the pertinent Army regulations, as discussed below.

The selection boards in this case used the "best qualified" method of selection, under which the board recommends for promotion not more than "a specified number of officers whom they consider the best qualified to meet the needs of the Army of all fully qualified officers in the zone of consideration." AR 624–100, ¶ 18*a* (1). This regulation, promulgated in 1966, required selection boards to categorize each officer they considered as "best qualified," "fully qualified," or "not fully qualified," depending on the rating the boards gave the officer. AR 624–100, ¶¶ 2*d*, 2*e*, 2*f*. Those best qualified were recommended for promotion. Only the nonselection of those officers found to be not fully qualified was considered a "passover" for separation under the two-passover rule. AR 624–100, ¶¶ 2*d*, 2*h*, 18*a*

15. Our result is slightly different from that reached in *Dilley v. Alexander*. There the court found that the remedy of granting new reconstituted selection boards was inadequate because it did not successfully put the officers "in the same position as they were in before the 1975 Boards convened." *Dilley v. Alexander, supra*, slip op. at 21. The court gave two reasons for this conclusion. The first was that, while plaintiffs were passed over by a validly constituted 1976 board, that board's actions were nevertheless rendered illegal because it

had before it the prejudicial fact plaintiffs were nonselected by the illegally constituted 1975 board but did not know of the latter's illegality. This factor has no influence in our case since plaintiffs received two valid opportunities for promotion by new boards. The second reason was that restricting consideration to only primary zone officers materially affected their prospects for promotion. We, however, do not reach that issue because we find that plaintiffs have waived any objection, which grounds were not apparently considered by that court.

(1). An officer twice reported by consecutive temporary selection boards as " 'not fully qualified' (passed over) for temporary promotion to the same grade will be relieved from active duty under the provisions of AR 135–173, * * * ." AR 624–100, ¶ 36. (AR 135–173 was superseded by AR 635–100 in 1969; we shall refer to the superseding regulation.) AR 635–100, ¶ 3–65, provides for the release from active duty of Reservists "who fail a second time to be considered fully qualified, under AR 624–100" for promotion. The nonselection of officers found fully qualified, not recommended for promotion, was not treated as a passover for discharge purposes.

In 1968 and 1970, the Army adopted and widely disseminated so-called message amendments to AR 624–100, which, however, it did not publish or promulgate as formal numbered changes to the regulation. These amendments were made "pending revision of AR 624–100," and reflected a "change in policy." The first amendment, dated August 14, 1968 (DA Message 876007), provided that officers who were selected were to be categorized as "selected for promotion" rather than best qualified; that officers previously rated fully qualified, not recommended for promotion, were to be rated as "selected for retention in grade"; and that officers previously designated as not fully qualified were to be characterized as "not selected." This amendment also provided that all non-Regular officers twice reported as not selected were to be relieved from active duty pursuant to implementing regulations. See AR 624–100, ¶ 36. The 1970 amendment (DA Message 960029) announced that "the following procedures will apply" for temporary promotions: (1) the "selected for retention in grade category is reserved for officers whose records clearly indicate the possibility for future advancement," i. e., officers whose promotions should occur at the subsequent board; (2) officers whom a prior board rated fully qualified, not recommended for promotion, or not selected for promotion will be categorized only as "se-

lected for promotion" or "not selected for promotion."

On May 19, 1975, both AR 624–100 and AR 635–100 (the actual release authority) were changed to provide that Reserve officers not recommended for promotion by two successive boards would be discharged.

▇▇▇▇ Plaintiffs argue that under AR 624–100 as promulgated in 1966 their two nonselections could not be treated as passovers requiring their discharge because the selection boards had not found them "not fully qualified," which under the regulation was the only rating that constituted a passover; that the 1968 and 1970 message amendments were ineffective to change the regulation because only formal numbered changes could do so; that in any event those amendments changed only AR 624–100, which deals with promotions and release from active duty, and did not change AR 635–100, pursuant to which the actual release takes place; and that the 1975 change in the regulation, which explicitly provided for the release from active duty of Reservists twice not recommended for promotion, cannot be applied retroactively to the proceedings before the original 1974 and 1975 selection boards.[16]

The Correction Board rejected these arguments. It concluded that the May 1975 amendments were not retroactive but "merely clarified and confirmed a long standing Departmental approved policy that an officer who was not selected (recommended) for temporary promotion to the next higher grade would have such non-selection counted towards separation * * ." It also found that the selection boards considered plaintiffs fully qualified but did not select them for promotion under the best qualified method and that they were thus "twice not selected (recommended) for temporary promotion." Finally, it held that the failure of the Army "to incorporate previously announced approved changes of policy" in formal numbered changes to the regulations did not deny plaintiffs any rights.

16. The 1975 boards convened in January, March, April, and May 1975.

The Correction Board's conclusion is not arbitrary, capricious, or unlawful, and we affirm it. The 1968 and 1970 amendments changed Army policy reflected in AR 624–100 to require release of Reserve officers who twice were not selected. Indeed, the 1968 amendment specifically provided that officers twice reported as not selected would be relieved from active duty pursuant to AR 635–100.

Although the 1968 amendment did not explicitly change AR 635–100, it implicitly and necessarily did so. AR 635–100, ¶ 3–65 a (1), provided for release from active duty of Reservists who twice had been found not "fully qualified, under AR 624–100, for promotion." The latter regulation in turn provided that officers twice passed over would be released from active duty "under the provisions of AR [635–100]." When the Army in 1968 and 1970 changed its policy to provide for release of officers who twice had not been selected for temporary promotion, it necessarily also intended to and did make a corresponding change in the companion regulation pursuant to which the actual release from duty took place.

In view of this history, the Correction Board justifiably concluded that the May 1975 change merely clarified and confirmed the Army's long-standing policy that Reserve officers twice not selected for promotion would be released from active duty.

Plaintiffs make a similar contention that the 1974 and 1975 original selection boards selected a larger number of officers from the secondary zone than the regulations permitted. Prior to 1972 the regulations permitted a smaller number of selections from the secondary zone than the 1974 and 1975 boards made. In 1972, however, the Secretary by message amendment (DA Message 202000Z) increased the maximum number for the secondary zone, and in 1974 the successor Secretary approved this amendment. The number of officers the 1974 and 1975 boards selected from the secondary zone was within the limit provided by the 1972 amendment.

▪ Plaintiffs make the same attack upon the 1972 amendment that they do with respect to the qualification categories discussed above: that the amendment of the regulation was ineffective because it was not made by formal numbered change and was not incorporated into later published changes in conformity with regulations governing procedures to be followed in amending Army regulations. The Correction Board rejected these contentions. It held: (1) that the Secretary's 1972 message amendment of the regulation was within his statutory and discretionary authority (see 10 U.S.C. § 3442(c)), (2) that his successor's 1974 endorsement of this amendment was also proper, (3) that failure to promulgate the amendment as a formal numbered change did not invalidate it, (4) that the change was clearly intended, widely disseminated and consistently followed as an approved policy and regulatory change, and (5) that "[w]hile it appears that the Department was remiss in not maintaining the regulation concerned on a current basis, no error or injustice * * * is considered to exist by reason of such failure." The Correction Board's decision is not arbitrary or lacking substantial evidentiary support, and we affirm it.

## IV

▪ Plaintiffs further contend that the Secretary denied them equal protection in violation of the fifth amendment by not retaining them on, or restoring them to, active duty while retaining other Reservists who also twice had been denied promotion. Because of our disposition of plaintiffs' claims in their favor on the matter of their entitlement to back pay for the period of their illegal separation, it is, of course, not necessary to reach this final contention and we decline to do so.

## CONCLUSION

▪ In summation, we conclude as follows:

(1) The 1974 and 1975 temporary selection boards, considered herein, were illegally composed in violation of 10 U.S.C. § 266 and AR 624–100, ¶ 16b (5). This error, upon

close analysis of the legislative command, is deemed prejudicial to those officers adversely affected by the action of the boards for the reasons that the statutory command is a clear and unequivocal expression of legislative intent and there is no way of evaluating what impact the error had on the original proceedings. Therefore, plaintiffs' separation predicated on passovers by the 1974 and 1975 selection boards was unlawful, and the Correction Board's refusal to correct their records expunging the passovers, restoring them to active duty, awarding back pay, and putting an explanation in their records explaining the gap therein caused by the illegal separation was arbitrary, capricious, and contrary to law.

(2) The procedure for reconsideration by reconstituted selection boards, afforded plaintiffs by the Correction Board in order to remedy the error, provided plaintiffs with a fair and complete opportunity to be considered for promotion in the manner intended by statute and regulation. Any objection plaintiffs might have had to the fact that only officers in the primary zone were considered for promotion was waived. The failures to be recommended for promotion by the 1974 and 1975 reconstituted selection boards were valid nonselections under AR 635-100. The Correction Board's attempt to make the nonselections rendered by the reconstituted boards effective as of the action of the original selection boards was arbitrary, capricious, and contrary to law. Therefore, plaintiffs are entitled to have their records corrected to show that they constructively served in the Army from the time of their illegal separation until their release date, 90 days after the Correction Board's decision acting upon the recommendations of the reconstituted selection boards. See AR 635-100, ¶ 3-65a. Such officers who would have completed 18 or more years of active federal service by this release date are entitled to have their records corrected to show constructive service in accordance with AR 635-100, ¶ 3-65d. Plaintiffs are entitled to back pay in accordance with law for periods of constructive service. Plaintiffs who are properly retired rather than separated on account of service, both actual and constructive, are entitled to retirement benefits in accordance with law.

(3) Since it is our understanding that, pursuant to this decision, no plaintiff is *now* entitled to actual restoration to active duty, such claims are denied.

Plaintiffs' motions for summary judgment are granted in part and denied in part in conformity with this opinion. Defendant's cross-motions are similarly granted in part and denied in part. Judgments are entered for plaintiffs and the cases are remanded to the trial division for determination of the amounts of recovery pursuant to Rule 131(c). The Secretary of the Army is directed to implement the other relief set forth above and made a part of these judgments.

FRIEDMAN, Chief Judge, dissenting in part:

Although I agree with and join in Parts I and III of the court's opinion, I dissent from the holding in Part II that the legal error resulting from the absence of Reservists on the 1974 and 1975 selection boards was not harmless.

The rationale of the court's ruling on this point is that "the doctrine of harmless error cannot be applied to this type of procedural error." I conclude, however, that the doctrine of harmless error may be applied to the legal error committed in this case and that the Correction Board properly concluded—a conclusion the Secretary approved—that in the case of those Reserve officers who were again twice passed over for promotion by the reconstituted selection boards, the absence of Reserve officers on the original selection boards was harmless error.

1. The principle that an error committed by a lower court does not warrant reversal of the court's judgment if the error is harmless is a venerable concept in our jurisprudence. See R. Traynor, The Riddle of Harmless Error, 3-17 (1970). The rule is

reflected in 28 U.S.C. § 2111,[1] the Federal Rules of Civil and Criminal Procedure,[2] and Rule 153 of the Rules of this court.[3]

As the court notes, the Supreme Court has recognized that even in case of constitutional error occurring in a criminal trial, not every such error requires "the automatic reversal of the conviction"; a conviction will be upheld if the "federal constitutional error . . . was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 22, 24, 87 S.Ct. 824, 827, 828, 17 L.Ed.2d 705 (1967). *See, e. g., Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) (violation of sixth amendment right of confrontation); *Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (same); *United States v. Parker*, 549 F.2d 1217, 1221 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977) (prosecutor's comment on defendant's failure to testify, in violation of fifth amendment).

Some constitutional rights are "so basic to a fair trial that their infraction can never be treated as harmless error . . . ." *Chapman v. California, supra*, 386 U.S. at 23, 87 S.Ct. at 827 (coerced confession, right to counsel, impartial judge). Sometimes the underlying statute itself manifests a congressional intent that no violation may be viewed as harmless error, or the application of the doctrine would be inconsistent with the basic statutory scheme. *See, e. g., Henderson v. United States*, 175 Ct.Cl. 690 (1966) *cert. denied*, 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967); *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *Cf.* Note, *Principles for Application of the Harmless Error Standard*, 41 U.Chi.L.Rev. 616, 623–24. There may be instances in which the character of the error itself and of the underlying proceedings preclude consideration of whether the error is harmless. *See, e. g.,*

*Ryder v. United States*, 585 F.2d 482, at 486, 487, 218 Ct.Cl. ——, —— (1978) (*ex parte* communication in adjudicatory proceeding); *Kotteakos v. United States, supra*, 328 U.S. at 762, 66 S.Ct. 1239.

Ordinarily, however, where the error occurs in a civil proceeding and does not rise to a constitutional level, there is room for the application of the harmless error principle.

The error in the present case is statutory, not constitutional. The selection board proceedings are not adjudicatory or accusatory, but evaluational. The error, although serious, was not so far-reaching and did not involve such a departure from basic precepts of fairness as to dictate against even considering whether it substantially prejudiced the plaintiffs. There is no reason why we should refuse to examine whether the original selection boards probably would have reached the same result with respect to the plaintiffs if they had had Reserve members.

The court concludes, however, that our prior decisions in *Ricker v. United States*, 396 F.2d 454, 184 Ct.Cl. 402 (1968), and *Henderson v. United States*, 175 Ct.Cl. 690 (1966), *cert. denied*, 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967), preclude application of the harmless error doctrine here. I do not so read them.

As the court points out, *Henderson* involved a board that did not have a quorum because one member of the board was not senior to the person under investigation, in violation of Air Force regulations providing that only members who were senior could sit on the board. The regulations also provided that the seniority requirement could not be waived. The flaw the court found in the proceedings before the *Henderson* board was that the tribunal could not validly

---

1. Section 2111 provides that the judgment of a court of appeals or the Supreme Court shall be rendered "without regard to errors or defects which do not affect the substantial rights of the parties." All 50 states have similar harmless-error statutes or rules. *See Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

2. Fed.R.Civ.P. 61; Fed.R.Crim.P. 52(a).

3. That rule, entitled "Harmless Error," provides that "the court will disregard any error or defect which does not affect the substantial rights of the parties."

function because one of the members necessary to constitute a quorum was disqualified from participating. The absence of a quorum generally renders the action of the body or tribunal void. *See, e. g.,* 2 Am. Jur.2d, *Administrative Law,* § 196 at 28–29 (1962); *Braniff Airways, Inc. v. Civil Aeronautics Board,* 126 U.S.App.D.C. 399, 406, 379 F.2d 453, 460 (1967). In the present cases, on the other hand, there is no showing that the original selection boards did not have a quorum or that any particular member was disqualified from sitting. Moreover, even assuming that one unidentified member of the original boards was disqualified because he should have been a Reservist, the boards still would have had a quorum without him.[4]

Finally, the unusual prohibition in the regulation in the *Henderson* case against waiver of the requirement that all voting members be senior to the officer under consideration suggests that the Air Force attached such importance to this requirement that any violation thereof necessarily would void the action of the board. There is nothing comparable in the statutory requirement for Reserve members on selection boards that justifies a similar inference. Indeed, the Army itself has recognized the less rigid character of this requirement by providing that Reservists are to be assigned to those boards only where practicable.

In *Ricker* the error in the composition of the board was the improper presence of an officer who was disqualified from sitting under a statute prohibiting a member from sitting on two successive boards to consider officers of the same rank. The court rejected the claim of harmless error on three grounds: (i) the ban against an officer sitting on successive boards may have been intended "to prevent a general form of prejudice," namely the establishment and perpetuation of cliques; (ii) *Henderson* held that the illegally constituted board "rendered the proceedings fatally defective"; and (iii) since the agency violated not its

own regulations but an Act of Congress, "[i]t follows, *a fortiori,* that the separations were illegal." 396 F.2d at 456–57, 184 Ct.Cl. at 407.

The claim of harmless error in *Ricker* was not based upon subsequent corrective action by the military that demonstrated a lack of prejudicial error, as here, but upon the nature of the error itself and its allegedly unharmful effect upon the particular proceeding. Moreover, under the government's theory in *Ricker* every violation of the statutory provision would have been harmless error, since officers appear before only one continuation board. As in *Henderson,* the error in *Ricker* was the improper presence of a disqualified officer and not the improper absence of a member with particular qualifications. Finally, although the opinion in *Ricker* does not mention the fact, the continuation board before which the plaintiffs appeared was required to have at least three officers (10 U.S.C. § 5702(a)(1) (1976)); the disqualification of one of the three members of the board, because of his prior service, meant that the board did not have a quorum.

There have been four district court cases that have applied the doctrine of harmless error to the nonselection of Reservists by boards that had no Reserve members. *Dilley v. Alexander,* 440 F.Supp. 375 (D.D.C. 1977), *rev'd,* Nos. 77–1789, 77–1790, 77–1791 and 77–1792 (D.C.Cir. Feb. 26, 1979); *Gober v. Alexander,* Civ. No. 77–17–COL (M.D.Ga. Aug. 23, 1977); *Whitehead v. Alexander,* 439 F.Supp. 910, 912 (D.D.C.1977); *Fuller v. Alexander,* 440, F.Supp. 380, 382 (D.D.C. 1977). The court stresses the court of appeals' reversal of the district court's holding of harmless error in *Dilley.* In doing so, however, the court of appeals in *Dilley* stated (slip op. at 21):

This case would be considerably different had the Relook Boards been normal promotion selection boards merely mas-

---

4. Five members constituted a quorum; the original boards ranged in size from six to 15 members.

querading under a new label. Despite the Relook Boards' misguided charter, if the Army had successfully placed the appellants in the same position as they were in before the 1975 Boards convened, then the procedural defect would have been repaired and appellants would have no cause to complain. The Army did not completely "reconstitute" that setting, however, and we regard its failure to do so in two important respects as critical to our holding in this case.

The two respects in which the court held that the reconstituted boards were defective for purposes of determining harmless error were (1) that prior to the action of the reconstituted board, the officers involved had been passed over by a second selection board, which had before it the record of the officers' improper passovers by the first improperly constituted board, and (2) that because the reconstituted boards considered only candidates from the primary zone, the officers' opportunity for promotion by the reconstituted boards was seriously weakened. The first situation did not exist in the present case. As we show below, the second objection does not negate the finding of harmless error here.

The *Dilley* case did not hold that harmless error can never be found in this type of illegality; it held only that on the facts of that particular case the error was not harmless. Moreover, it is far from clear that the *Dilley* court would have refused to sanction the ruling of the Correction Board that the error here was harmless. Indeed, the opinion in *Dilley* at least suggests that the District of Columbia Circuit might well have upheld the board's action in this case.

In addition to the four district court decisions that have held the absence of Reservists on the original selection boards to be harmless error, there have been decisions that have applied the harmless error doctrine to other situations involving military boards, including the claim that the board was improperly constituted. In *Coughlin v. Alexander*, 446 F.Supp. 1024, 1027 (D.D.C. 1978), *aff'd*, 191 U.S.App.D.C. 212, 589 F.2d 1115 (1978), the fact that a temporary selec-

tion board was illegally constituted because it included a member who was junior in rank to the plaintiff was held harmless error because plaintiff was passed over by several subsequent properly constituted boards. In .*Knehans v. Callaway*, 403 F.Supp. 290 (D.D.C.1975), *aff'd*, 184 U.S. App.D.C. 420, 422, 566 F.2d 312, 314 (1977), the presence of invalid officer efficiency report and the omission of several complimentary letters from plaintiff's record was held not automatically to invalidate plaintiff's selection out. In *Bensing v. United States*, 551 F.2d 262 (10th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977), an error in recordation of the promotion list service date that required earlier board consideration did not automatically invalidate plaintiff's nonselection. *Cf. Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (substantive constitutional defect in employment separation context did not require automatic reinstatement and back pay).

The court discusses these cases in detail, drawing subtle distinctions between them and the present cases. Of course, the cases are distinguishable. I cite them only to show that there has been repeated judicial acceptance and application of the doctrine of harmless error in reviewing the actions of a myriad of military tribunals in situations where the issues the tribunal decided and the nature of the errors it committed were not so different in kind or degree from the error here committed as to call for a different result in these cases.

2. I agree with the Correction Board that the absence of Reservists on the original 1974 and 1975 selection boards was harmless error.

Except for limiting consideration to officers in the primary zone, discussed below, the reconstituted boards followed the identical standards and procedures the original boards had used. The reconstituted boards considered *de novo* all the officers in the primary zone the original boards had considered, including both those selected and those rejected for promotion. Each offi-

cer's record was reconstituted as it had been in 1974 and 1975. The reconstituted boards utilized the same instructions and guidelines the Secretary had given to the original boards. Any officer the first reconstituted board passed over was considered by the second reconstituted board. Each reconstituted board, unlike the original board, had Reserve membership.

The record does not show how many Reserve officers not selected by the original boards were selected by the reconstituted boards. As the court notes, the number was substantial. None of the plaintiffs was selected by either the original boards which contained no Reservists, or by the reconstituted boards which had Reservists. Considering all of the circumstances, the Correction Board properly concluded that it was "reasonable to presume that had [the plaintiffs] been considered by properly constituted boards, they would not have been selected for promotion," and that the absence of Reservists on the original selection boards was harmless error with respect to the plaintiffs.

The concept of harmless error deals with probabilities, not certainties. It never can be stated with certainty that an error made no difference in the tribunal's decision. Yet that is what the court seems to be requiring when it offers as a reason for rejecting the concept of harmless error "that it is not possible for a reviewing body to determine what effect the error had on the judgment of the original proceeding." The rule of harmless error does not require such certainty; if it did, it would virtually never apply.

Plaintiffs contend that the proceedings before the reconstituted selection boards did not provide a fair basis for evaluating the effect the absence of Reservists on the

original boards had upon Reservists denied promotion, because the reconstituted boards did not consider officers from the secondary zone. Fifteen percent of the captains and majors and 7½ percent of the chief warrant officers the original selection boards recommended for promotion were from the secondary zone. This was the maximum permissible number under the regulations, and the number the Secretary of the Army had indicated to those boards would be appropriate. *See* note 5, *infra*. As the court notes, this reduced the number of officers selected from the primary zone.

Since the reconstituted boards were instructed to and did consider only officers from the primary zone, the total number of officers those boards were to select was reduced by the number of secondary zone officers the original boards had selected. Plaintiffs allege that this change in the number of officers the reconstituted boards could select improperly impinged upon the discretion of selection boards to select less than the maximum permissible number from the secondary zone, and thereby reduced the number of places for which the plaintiffs were competing; and that this disparity between the original and reconstituted boards meant that the plaintiffs' nonselection by the reconstituted boards was not a fair indication of the likelihood that they would not have been selected had the original boards contained Reservists.

The Secretary had indicated to the original boards that he wanted them to select the maximum number from the secondary zone, and they did so.[5] There is no reason to believe that if the reconstituted boards had been directed to select the same number of officers the original boards had selected and to draw them from both zones,

**5.** The Secretary had abolished the original 1974 captain-to-major temporary selection board before it made its recommendations, because he concluded that the low percentage of promotions from the secondary zone that the board was about to announce did not comply with his original instructions to it. The Secretary appointed a new board and instructed it to select "the maximum number of officers from the secondary zone," and the new board did so (15

percent). Plaintiffs unsuccessfully challenged before the Correction Board both the Secretary's abolition of the original board and the instructions to the new board as an impermissible restriction of the board's discretion, but they do not renew that contention here. In any event, I think that the Secretary acted within his broad discretion over military personnel (*cf. Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953)) in taking those actions.

the reconstituted boards also would not have taken the maximum number from the secondary zone. The reconstituted boards presumably were aware of the Secretary's action with respect to the original 1974 captain-to-major board (*see* note 5, *supra*). Thus, plaintiffs would be most unlikely to have benefitted from the procedure they believe the reconstituted boards should have followed. This is particularly so since officers selected from the secondary zone are better qualified than those from the primary zone. There seems little likelihood that the plaintiffs, all of whom were passed over by both reconstituted boards, would have been selected by those boards in preference to secondary zone officers if the latter were under consideration.