Military pay; screening for active duty for pilot training; supplemental board curing procedural error of original screening board. — On January 25, 1980 the court entered the following order:
*578 Before Davis, Judge, Presiding, Kashiwa and Smith, Judges.
This military pay case, submitted by plaintiff and argued orally by defendant, comes before the court on cross-motions for summary judgment. After considering the parties’ written submissions and the Government’s oral argument, we hold for the Government.
The record shows the following without substantial dispute: While a student at Ohio State University, plaintiff, in September 1972, agreed with the Air Force to participate in the Air Force Reserve Officers Training Corps (ROTC) program, to accept an Air Force commission if offered, and to enter and remain on active duty for at least four years unless sooner released. At about the same time he enlisted in the Air Force and agreed that (a) if commissioned he would remain a member of a regular or reserve component of the Air Force for six years, and (b) if the Service did not require fulfillment of his active duty commitment or ordered him to active duty for no more than six months, he would remain a reservist for eight years.
After completing ROTC training, Stephens graduated from the University and was commissioned a second lieutenant in June 1974. Though he had been pointed toward and expected to become a pilot, he was not then called to active duty for training for that purpose because the Air Force had too few pilot-training slots for the number of applicants coming down the line. The Air Force decided to handle this oversupply problem by screening the existing pool of ROTC cadets and graduates for involuntary release under the curiously-named "Palace Option” which allowed the new officers (if not selected for extended active duty) to choose to serve only 90 days of active duty and then revert to and remain in the Air Force Reserve for eight years.[1] The screening was to be done by an ad hoc board and was based on written forms to be filled out and signed by the applicants for pilot training, giving their *579 pertinent military and civilian records. For those applicants like plaintiff, who were no longer resident at or near the ROTC institution, the practice was to fill out the forms on behalf of and in the absence of the applicant. In Lieut. Stephens’ case, this resulted in a form which omitted substantial relevant data which should have been made available to the screening panel.
Together with many other applicants plaintiff was screened for the "Palace Option” and thus dropped from pilot training. He served on active duty for the required 90 days and then reverted to reserve status. When he discovered that the form which had been used to screen him out of pilot training failed to reflect his full record, he asked for a reevaluation on the basis of the complete and accurate form. This was done for plaintiff and about 20 other persons by a supplemental board at the Air Force Military Personnel Center.[2] This board raised Lieutentant Stephens’ score slightly, but found that this was not enough to put him above the cut-off line for selection; there were still a substantial number of individuals who had higher original scores than his but who were also not selected for active duty. Accordingly, no change was made in his status. Plaintiff sought relief, unsuccessfully, from the Correction Board and this suit followed. The claim is for back pay, as well as placement in active duty pilot-training status.
It is unnecessary to decide whether plaintiffs agreements with the Air Force gave him enforceable rights, because even if one assumes that proposition the agreements explicitly gave the Air Force discretion to release him from active duty at any time, or to refuse to call him. The question then becomes whether the refusal to order him to active duty, at the time and in the manner it occurred, was arbitrary, capricious, or violated any of his rights to proper treatment.
We cannot say that the Air Force’s determination to meet its budgetary problems by reducing the existing pool *580 of pilot applicants was an abuse of discretion, or that the particular screening system, if properly pursued, was unacceptable. Both of these Air Force responses to the situation appear to be reasonable in the circumstances— and well within the bounds of administrative discretion. Plaintiff suggests that he was discriminated against because he was black, but there is nothing substantial to support this allegation. On these cross-motions for summary judgment, it is not enough to say generally and conclusorily, as plaintiff does, that he is aware of white candidates who were selected for extended active duty though less qualified than he.
The record does show that a procedural error was committed in the original screening process which eliminated plaintiff from training. This was the omission— because the form was initially completed without plaintiffs participation — of significant data from the form on which the original screening board acted. We are satisfied, however, that this error was cured by the reevaluation by the supplemental board of plaintiffs case and others. This board had before it a full and corrected form, as approved by Lieut. Stephens, and gave him credit for all the information appearing on it. Nevertheless he did not reach the selection zone and would not have been selected even if the original board had considered his complete record. The case is thus comparable to Doyle v. United States, 220 Ct. Cl. 285, 599 F. 2d 984, 998-1001 (1979), in which the court upheld promotion passovers ordered by reconstituted selection boards which gave those officers the full and fair consideration required of the original boards. The same is true here. The supplemental board gave Lieut. Stephens all the consideration that the original screening board should have given him, and then found that he would not have been selected. No adequate ground is proffered for rejecting this considered administrative conclusion.[3]
*581 For these reasons, plaintiffs motion for summary judgment is denied and defendant’s motion is granted. The petition is dismissed.
IT IS SO ORDERED.

 Plaintiff asserts that this method of reducing the backlog of applicants for pilot training was adopted, instead of stopping the inflow of new ROTC graduates and cadets, in order to save money in longevity pay and comparable compensation over the years. The defendant’s own presentation shows that, in part, this was a factor in the Air Force’s choice of remedy.

 Plaintiff denies that the personnel who reevaluated his case constituted a supplemental board but we accept the affidavit of the former Director of Personnel Procurement at the Air Force Military Personnel Center that the "three experienced field grade officers” within the Center who conducted the reevaluation constituted a supplemental board.

 Unlike Doyle, supra, we do not have the issue of active duty pay for plaintiff during the period between the action of the first board and that of the supplemental board. He was paid for the 90 days of active duty he served during that period under the "Palace Option.” He was not otherwise on active duty and had no right to active duty until he was properly ordered to active duty; he did not acquire a right to be called to active duty simply because the first board acted incorrectly in screening him (though he had the right to be given a proper screening). His case is the opposite of officers already on active duty who are removed from active duty by improper procedures; such officers retain their right to active duty pay until legitimately removed from active duty.