**David N. BOCKOVEN, et al., Appellants,**

**v.**

**John O. MARSH, et al., Appellees.**

**Appeal Nos. 83–1032 to 83–1051.**

United States Court of Appeals, Federal Circuit.

Feb. 23, 1984.

Keith A. Rosenberg, Washington, D.C., argued for appellants; With him on brief, was David E. Weisman, Washington, D.C.

Louis R. Davis, Washington, D.C., argued for appellees; With him on brief, were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director, Washington, D.C.

Lieutenant Colonel Charles R. Fulbruge, III, Major Michael J. Nardotti and Major Thomas R. Folk, Dept. of the Army, Washington, D.C., of counsel.

Before FRIEDMAN, Circuit Judge, NICHOLS, Senior Circuit Judge, and BALDWIN, Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Columbia granting the appellees' motion for summary judgment in a suit challenging the release from active duty of the appellant Army Reserve officers after they had been twice passed over for promotion by Army selection boards. We affirm.

I

This case is a sequel to the decision of the Court of Claims in *Doyle v. United States,* 599 F.2d 984, 220 Ct.Cl. 285, *modified,* 609 F.2d 990, 220 Ct.Cl. 326 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980). In *Doyle,* the court invalidated certain aspects of the procedures the Army had followed in considering the promotion of Reserve officers. The Army's system for promoting Reserve officers is fully explained in *Doyle,* and we here summarize those procedures and practices only to the extent necessary to understand the issues here. Further details involving the application of those procedures to these particular cases are set forth in the discussion of the grounds upon which the appellants challenge their release from active duty.

A. Army Reserve officers on active duty are considered for temporary promotion after they have served stated times in their temporary rank. Army selection boards consider for promotion at the same time all eligible officers of the same rank. Separate boards are convened to consider officers of each rank, *e.g.,* all majors eligible for promotion to lieutenant colonel. An officer who is not promoted is considered again by the next convened board, usually in the following year. An Army Reserve officer who is passed over for temporary promotion

by two successive selection boards is released from active duty. *See* Army Regulation 635–100, ¶ 3–65a (1982).

Each of the appellants was an Army Reserve officer on active duty who was passed over twice for temporary promotion by Army selection boards. The officers then either were released from active duty or slated to be released. One of the appellants was passed over by selection boards in 1972 and 1974. A number of appellants were passed over by boards in 1974 and 1975. A third group of appellants was passed over by boards in 1975 and 1976.

Following the decisions of the 1972, 1974, and 1975 boards, Reserve officers whom the boards had failed to promote discovered that some of the boards had not included any Reserve members. This violated the requirement in 10 U.S.C. § 266(a) (1976) that a board considering the temporary promotion of Reserve officers "shall include an appropriate number of Reserves ...." Those officers applied to the Army Board for the Correction of Military Records (Correction Board) to set aside their release from active duty on the ground that the absence of reservists on the boards vitiated the boards' actions. *Doyle,* 599 F.2d at 991.

The Correction Board held that the absence of reservists resulted in an "injustice" to the passed-over officers. It recommended to the Secretary of the Army that new selection boards containing an appropriate number of reservists be appointed to reconsider all officers who had been considered for promotion by the defective 1972, 1974, and 1975 boards, that in reconsidering the promotion of those officers the new boards follow the same principles and practices that the old boards had followed (with one exception discussed below), and that the records of all those officers be reconstituted as they were at the time the boards originally sat. *Id.* The Secretary of the Army approved the recommendation, and the new boards, known as "relook boards," were convened in 1976.

The one respect in which the relook board proceedings differed from those before the earlier boards related to the treatment of officers in the "secondary zone." The officers the original selection boards considered for promotion consisted of those in both the "primary" and "secondary" zones. Officers who had served the time in grade after which a double pass-over would result in release from active duty are in the "primary zone." Officers in the "secondary zone" are outstanding officers who have served less time in grade and generally are younger than those in the primary zone. Unlike officers in the primary zone, the pass-over of an officer in the secondary zone is not treated as one of the two pass-overs that mandate release from active duty.

The Secretary of the Army specifies the total number of officers each board is to promote, based upon the Army's anticipated officer needs in that grade for the next year, and the number it may select from the secondary zone. In 1974 and 1975, all the selection boards selected the maximum number of officers they were permitted to pick from the secondary zone.

All of the appellants were in the primary zone when they were twice passed over.

The relook boards, unlike the original boards, did not consider any officers from the secondary zone, but limited their reconsideration to those in the primary zone. The relook boards selected the same number of officers in the primary zone that the original board had selected. A significant number of the officers the relook boards selected had been passed over by the original boards, and a number of officers the original boards had selected were passed over by the relook boards. The promotions of officers selected by the original boards remained effective despite subsequent pass-overs of the same officers by the relook boards.

The relook boards twice considered for promotion those appellants who had been passed over by the 1972 and 1974 boards or the 1974 and 1975 boards, but did not select them for promotion.

As noted, some of the appellants had been considered only by one original board that had no reservists, the 1975 board. Prior to the convening of the relook boards in

1976, those appellants were considered by the 1976 regular selection boards, which contained reservists. (As discussed in part IV, the appellants contend that the 1976 boards did not have an appropriate number of reservists.) The 1976 board passed over those appellants as the 1975 relook board did thereafter.

B. The appellants filed this case in 1980. They challenged their release from active duty on various grounds, of which they assert only three in this court.

(1) The 1972, 1974, and 1975 relook boards were invalid because they did not consider officers from the secondary zone. According to the appellants, this denied them the opportunities for promotion they would have had before the original boards if those boards had been validly constituted. Their theory is that the relook boards might not have selected the maximum number of officers from the secondary zone, which would have created additional promotion positions for primary zone officers.

(2) The 1976 board improperly considered evidence that the appellants had been passed over by the original 1975 board.

(3) The 1976 board was improperly constituted because it did not contain "an appropriate number" of reservists, as the statute required.

The relief the appellants sought was a declaratory judgment that their nonselection for promotion and their release from active duty were "void" and "illegal," an order restoring them to active duty and providing for reconsideration of their promotion by "two duly constituted promotion selection boards in the ordinary course of events," the correction of their records to void the pass-overs and releases from active duty, and an award of backpay and allowances not to exceed $10,000.

Both sides moved for summary judgment. The district court granted the government's motion and denied the appellants' motion. In an accompanying opinion, it discussed and rejected these contentions. The court held:

(1) "The speculation that the Relook Boards might have reduced the secondary zone allotment if permitted to do so is hardly credible";

(2) Any information the 1976 board may have had concerning the appellant's prior pass-over was cured by the fact that the members of the board had been specifically instructed not to consider prior pass-overs and had taken "a special oath to follow strictly the instructions provided the board about the appropriate criteria for selection"; and

(3) The Secretary of the Army had broad discretion to determine what constitutes an "appropriate" number of reservists on a selection board, and "the Secretary did not abuse his discretion in appointing reserve officers to the 1976 selection boards . . . ."

## II

In *Doyle,* the Court of Claims, after holding that "the original 1974 and 1975 selection boards were improperly constituted because they did not include any Reserve officers as members," in violation of 10 U.S.C. § 266(a), 599 F.2d at 992, upheld the release from active duty of the Reserve officers based upon the two pass-overs by the relook boards. The court treated the relook boards as newly constituted selection boards, see 599 F.2d at 998, and concluded that "[t]he procedure for reconsideration by reconstituted selection boards . . . provided plaintiffs with a fair and complete opportunity to be considered for promotion in the manner intended by statute and regulation." 599 F.2d at 1004. The court further ruled that "[a]ny objection plaintiffs might have had to the fact that only officers in the primary zone were considered for promotion was waived" by their failure to raise the issue before the Correction Board. *Id.; see* 599 F.2d at 1000.

In the present case, the parties dispute whether the appellants raised this issue before the Correction Board. It is unnecessary to resolve that question, however, since even if they did raise it, we conclude that the failure of the relook boards to consider for promotion officers in the secondary zone affords no basis for rejecting

the action of those boards in passing over the appellants.

As *Doyle* indicates, the inquiry is not whether the relook board proceedings exactly duplicated the proceedings before the original selection boards, but whether the relook board proceedings afforded the appellants "a fair and complete opportunity to be considered for promotion in the manner intended by statute and regulation." 599 F.2d at 1004. We answer that question affirmatively.

In limiting the relook boards to consideration of only the primary zone officers, the Secretary apparently recognized that only those officers might have been prejudiced by the absence of reservists on the original selection boards and, therefore, that they were the only officers to be selected a second time. No Reserve officers in the secondary zone whom the original boards did not select challenged the composition of those boards. In essence, the Secretary allowed the actions of the original boards in selecting the secondary zone officers to remain unchanged. The appellants have not shown that any statute or regulation precluded the Secretary from adopting this reasonable and practical procedure. Since no change would be made in the original selection of secondary zone officers, there was no occasion for the relook boards to reconsider their selection.

Nor have the appellants given any convincing reason for believing that if the relook boards had considered secondary zone officers, the appellants' chances for promotion would have been increased. The appellants assume that if the relook boards had been permitted to consider secondary zone officers, they might have selected a smaller number from that zone than the original selection boards did, and that the relook boards therefore would have selected a larger number of primary zone officers. Although this argument has a superficial plausibility, it collapses in the light of the actual practice the selection boards followed in recommending officers for promotion. The Secretary made it clear that he expected and insisted that the selection boards pick the maximum number of officers they were authorized to select from the secondary zone. *See Doyle,* 599 F.2d at 999. Indeed, when one of the 1974 selection boards indicated that it intended to select less than the maximum number of secondary zone officers, the Secretary abolished that board and appointed a new one, which selected the maximum number from that zone. 599 F.2d at 999 n. 13. The Court of Claims held that in thus "rejecting the board's recommendations, the Secretary violated no statute or regulations, but instead properly implemented the selection process." *Sexton v. United States,* 228 Ct.Cl. 706, 709 (1981).

All the 1974 and 1975 selection boards, including those containing reservists, selected the maximum number of officers from the secondary zone. There is no reason to think that the relook boards, which were intended to replicate the original selection boards for those years, would have acted differently from the original boards and selected fewer than the full complements of secondary zone officers. As a practical matter the appellants have presented nothing that even suggests, much less shows, that there was any realistic likelihood that the relook boards would have selected a greater number of primary zone officers if they had been authorized to consider secondary zone officers a second time.

The appellants rely upon *Dilley v. Alexander,* 603 F.2d 914 (D.C.Cir.1979), where, in setting aside the pass-overs and release from active duty of Army Reserve officers situated similarly to the appellants, the court stated:

> By limiting the Relook Boards' duty to reconsider the primary zone alone, the Corrections Board eliminated a total of 664 promotion vacancies for which appellants could have otherwise competed. This reduction in the number of available slots materially affected appellants' prospects for promotion before the Relook Boards and deprived them of substantial rights guaranteed them by the statute.

603 F.2d at 925.

There is no indication, however, that in so ruling, the *Dilley* court considered the factors we have just discussed, factors that, in

our view, call for a contrary conclusion. For the reasons we have given, we cannot agree with *Dilley* that the relook boards' inability to consider secondary zone officers "materially affected appellants' prospects for promotion before the Relook Boards" or "deprived them of substantial rights guaranteed them by the statute."

In sum, we have no basis for rejecting the conclusion of the district court in this case that the relook procedure "provided an adequate remedy to those Reserve officers who were not selected by the original boards . . . ." *Bockoven v. Marsh,* Civ. No. 80–0417, slip op. at 17 (D.D.C. Mar. 28, 1983).

### III

A number of the appellants were passed over by (1) the 1975 board, which contained no reservists, and (2) the 1976 board, which had reservists. In part IV we consider appellants' argument that the 1976 board did not have sufficient reservists. Here we address their contention that the proceedings before the 1976 board were fatally defective because that board had before it evidence of the appellants' prior pass-overs by the 1975 board.

The principal evidence upon which the appellants rely is the existence in the officers' personnel files of a pentagonal stamp mark, which the appellants assert indicated to members of the board that the officers had been before a prior selection board. The government denies that the stamp so indicated. Once again, it is unnecessary to resolve that disputed factual issue. Assuming, *arguendo,* that the 1976 board had evidence of the appellants' pass-overs by the improperly constituted 1975 board, that would not invalidate the decision of the 1976 board.

As the district court pointed out, in rejecting this argument with respect to the relook boards, the members of the board were under orders not to consider any prior pass-overs by an earlier board and had taken "a special oath to follow strictly the instructions provided the board about the appropriate criteria for selection." These facts are equally applicable to the 1976 board. We have no basis for rejecting the

conclusion of the district court that "highly trained and disciplined Army officers should be presumed to have followed direct orders to disregard any information not properly before them in making their selection decisions."

The appellants argue that the fact that only a relatively small percentage of the officers passed over by the 1975 boards was selected by the 1976 boards shows that the evidence of non-selection had adversely affected the 1976 boards' consideration of the appellants. The conclusion does not follow from the premise. A more reasonable and convincing explanation is that the 1976 boards selected only a relatively small percentage of the officers the 1975 boards had passed over because the best qualified primary zone officers already had been promoted by the original 1975 board.

In *Dilley,* one of the two grounds upon which the court of appeals invalidated the pass-overs by the 1976 boards was that the officers' records before those boards reflected the "non-selection in 1975 even though appellants had never been lawfully passed over." 603 F.2d at 924. There is no indication in *Dilley,* however, that the court considered the instructions to the 1976 boards and the oath their members took. This is the keystone to our decision on the issue. We therefore do not follow *Dilley* in this respect.

### IV

The final ground upon which the appellants challenge the procedures by which they were twice passed over is that the 1976 boards did not contain a sufficient number of reservists to satisfy the governing statute and the implementing regulations of the Secretary of the Army. Prior to 1980, the statute provided:

Each board convened for the appointment, promotion, demotion, involuntary release from active duty, discharge, or retirement of Reserves shall include an appropriate number of Reserves, as prescribed by the Secretary concerned under

standards and policies prescribed by the Secretary of Defense.

10 U.S.C. § 266(a) (1976).

The Secretary of Defense prescribed the following "standards and policies" governing the Reserve membership of boards:

> The Secretaries of the Military Departments will, with due regard to availability of qualified reservists, pertinent statutory provisions, the nature of the board action, and the categories, regular and reserve, which may be considered by the board, provide in the membership of the indicated boards to the fullest practicable extent a fair and adequate representation of members from the reserve components.

Department of Defense Instruction 1205.4 (1952). In turn, the Secretary of the Army provided that

> [w]henever a zone of consideration includes non-regular officers, selection boards will, where practicable, include at least one officer of the Reserve components.

Army Regulation 624–100 ¶ 16b(5) (1968).

(The statute was amended in 1980 to provide that promotion boards "shall include at least one member of the Reserves...." 10 U.S.C. § 266(a) (1982).)

The number of members, the number and percentage of reservists on the 1976 selection boards, and the percentage of officers the boards considered who were reservists, is shown in the following table:

| Board | Members | Reservists | | Percent of officers<br>Board considered who<br>were reservists |
|---|---|---|---|---|
| CWO | 15 | 3 | 20.0% | 56.0% |
| MAJ., AUS | 15 | 3 | 20.0% | 52.5% |
| LT. COL., AUS | 15 | 2 | 13.3% | 33.1% |
| LT. COL., AMEDD | 6 | 1 | 16.6% | 19.0% |
| LT. COL., JAGD | 6 | 1 | 16.6% | 6.4% |

The appellants argue that the "appropriate number" of reservists a selection board must have is one that produces a percentage of reservists on the board that is "roughly equal" to the percentage of reservists among the officers the board will consider. They conclude that because the percentage of reservists on the first three boards shown above, which considered all but two of the appellants in this category, was less than half the percentage of reservists among all the officers each board considered, the Reserve membership of the boards did not satisfy the statute.

■ We do not read section 266(a) as having required the Secretary of the Army to appoint to selection boards the number of reservists that was proportionately equal to the number of reservists the board would consider. To the contrary, we conclude that the statute gave the Secretary substantial discretion to determine what constitutes an "appropriate number" of reservists and that the appellants have not shown that the

number of reservists on the 1976 boards was not "appropriate."

Section 266(a) in terms gave the Secretary extremely broad discretion to determine how many reservists to include on selection boards. It specified only that he should include an "appropriate number" and left it to the Secretary to "prescribe" that number under "standards and policies prescribed by the Secretary of Defense." The only limitation the statute imposed upon the Secretary's discretion was that he must exercise it in accordance with those "standards and policies."

■ The Secretary of Defense prescribed only one "standard[ ] and polic[y]": that the service Secretaries should provide in the Board's membership "a fair and adequate representation of members from the reserve components." The issue under the statute and regulations is whether the number of reservists on the 1976 board provided fair and adequate representation for the Reserve officers the boards considered for pro-

motion. As we explain below, we cannot say that the Secretary of the Army abused his discretion in not appointing a greater number of reservists to the 1976 board.

The appellants argue that the legislative history of section 266(a) required proportionate equality between the number of reservists on the board and the number of reservists the board considers. They rely primarily on the statement in the House and Senate committee reports that "the proportion of Reserve officers on the board should be roughly equal to the proportion of Reserves being considered." S.Rep. No. 1795, 82d Cong., 2d Sess. 35–36, *reprinted in* 1952 U.S.Code Cong. & Ad.News 2005, 2042; *see* H.R.Rep. No. 1066, 82d Cong., 1st Sess. 49 (1951). Our reading of the legislative history, however, produces a different conclusion.

Section 266(a) originally was enacted as part of the Armed Forces Reserve Act of 1952, ch. 608, § 254, 66 Stat. 481, 496. The House version of the section merely provided that boards, including promotion boards, "shall include appropriate numbers of members of the reserve components" and did not include the additional language "as prescribed by the appropriate Secretary in accordance with standards and policies established by the Secretary of Defense." H.R. 5426, § 255, 82d Cong., 1st Sess., 97 Cong. Rec. 13148, 13153 (1951). The latter language was added by the Senate, which also changed the words "appropriate numbers" to "appropriate representation." *See* H.R. 5426, § 249, 82d Cong., 2d Sess., 98 Cong. Rec. 8294, 8298–99 (1952). The House and Senate committee reports used similar "roughly equal" statements with respect to the different versions of this provision.

The legislation went to conference, and the House accepted the Senate version of this provision, although reverting to the phrase "appropriate numbers." The conference committee report consisted of the Statement of the Managers on the Part of the House. They stated that "[s]ection 255 of the House bill provides that boards for the promotion ... of reservists shall include appropriate numbers of reservists ..." and that the Senate had "modified" it

so as to provide more flexibility by allowing the Reserve representation on such boards to be established by regulation . . . .

H.R.Rep. No. 2445, 82d Cong., 2d Sess. 32–33, *reprinted in* 1952 U.S.Code Cong. & Ad. News 2057, 2058.

Although the committee reports on both versions of the provision had used the same "roughly equal" language with respect to it, in light of the conference committee report we do not construe section 266(a) as having limited the Secretary's authority to establish Reserve representation on the boards to specifying the boundaries of rough equality. Rather, we conclude that Congress intended to give him broad discretion to specify by regulation what constitutes an appropriate number of reservists.

The committee report merely stated that the proportion of reservists on the Board "should be" roughly equal to the proportion of reservists being considered. This language was hortatory rather than mandatory. As the district court pointed out, Congress did not include the "roughly equal" language in the statute itself, although it easily could have done so if it had intended to impose that requirement. *Compare* § 266(a) *with* Reserve Officer Personnel Act of 1954, ch. 1257, § 203(b), 68 Stat. 1147, 1150 (codified at 10 U.S.C. § 3362(b) (1982)) (providing that at least one-half the members of any board considering reservists for permanent promotion must be reservists).

The appellants also rely on *Stewart v. United States,* 611 F.2d 1356, 222 Ct.Cl. 42 (1979), where the Court of Claims held that one Reserve officer on an Air Force board of 25 officers was not "an appropriate number" under section 266. The court quoted the "roughly equal" language in the Senate committee report and stated that "one out of 25 is not even close to being proportionate to the number of Reserve officers being considered for promotion (30 percent)." 611 F.2d at 1359. The court restricted its decision to that particular board and left open questions concerning the validity of boards

containing "additional board members from the Reserve." 611 F.2d at 1361.

We do not read *Stewart* as adopting the "roughly equal" standard for determining whether a board contained an "appropriate number" of reservists. The actual holding in *Stewart* was that, in the particular circumstances there, one out of 25 reservists was not an appropriate number because it was merely "token Reserve officer membership." 611 F.2d at 1360. The court's references to the "roughly equal" test were merely passing statements made in support of its conclusion.

In *Teeter v. Marsh,* Civ. No. 80–2670 (D.D.C. August 29, 1983), another judge of the United States District Court for the District of Columbia adopted the "roughly equal" test. For the reasons given in this opinion, we cannot accept that analysis.

The appellants have not shown, and apparently have not even argued, that apart from the "roughly equal" standard, the number of reservists on the 1976 boards was not an appropriate number. In contrast to *Stewart,* the percentage of reservists on the board in this case ranged from 20 to 13.3, and the comparative percentages of the reservists on the board and among the officers considered ranged from more than twice as many to slightly more than one-third.

In sum, the appellants have not shown that the number of reservists on the 1976 boards did not provide "a fair and adequate representation of members of the Reserve components," as the regulation of the Secretary of Defense required, or that they did not constitute an "appropriate number" under section 266(a). In view of the limited scope of our review of military personnel issues, *see Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), that is the end of the matter.

### V.

■ In *Doyle,* the court held that the officers who had been discharged because the invalid 1974 and 1975 boards twice had passed them over, were entitled to backpay from the time of their release from active duty until the second pass-over by the re-look boards. In the present case, the appellants who had been passed over by only one invalid board (the 1975 board) were not released from active duty until the 1975 relook boards passed them over following the pass-overs by the valid 1976 boards. Since those appellants were not released until there had been two pass-overs by valid selection boards, they are not entitled to backpay.

■ The other appellants—those who were released following the two pass-overs by the 1972 and 1974 or the 1974 and 1975 invalid boards—contend that even if we reject their other arguments, at least they are entitled to backpay for the period between their release and their second pass-over by the relook boards, as occurred in *Doyle.* The district court did not discuss this contention. The government argues that the appellants did not make the point in the district court and therefore are precluded from raising it here.

We have reviewed the briefs and other pleadings filed in the district court and cannot find therein any assertion of this claim by the appellants. If the appellants were seeking this alternative lesser relief, they were obliged to bring it to the attention of the district court, so that that court could consider it. Since the district court discussed the appellants' contentions in some detail, its failure even to mention this argument strongly suggests that the appellants did not raise it in that court.

The attorney who represents the appellants in this court also represented them in the district court. He has given no explanation for his failure to raise the issue there. Perhaps, as the government suggests, it represented a calculated decision not to jeopardize his hope of winning more broadly by also raising a narrower claim that only some of the appellants could have asserted. Having in effect waived that claim in the district court, he cannot resurrect it in this court, and we decline to consider it.

The judgment of the district court is affirmed.

AFFIRMED.