Charles J. BREITZKE, Jr.

v.

The UNITED STATES.

No. 474–82C.

United States Claims Court.

Oct. 17, 1985.

Allan W. Farlow, Washington, D.C., for plaintiff.

Sharon Y. Eubanks, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Major Alexander S. Nicholas, Office of the Judge Advocate General, U.S. Air Force, of counsel.

## OPINION

WOOD, Judge:

In this action, plaintiff, a United States Air Force Reserve officer who was involuntarily released from active duty as a captain January 31, 1980, following two non-selections for promotion to the temporary grade of major, sues to recover the basic pay and allowances of a commissioned officer from and after February 1, 1980, on the ground that his said release from active duty was unlawful.[1]

On November 23, 1984, following oral argument on plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment, a ruling denying plaintiff's motion, and granting defendant's motion as to all issues in the case save one (whether plaintiff's first failure of selection for promotion to the temporary grade of major, in 1978, was unlawful and ineffective) was made. With respect to the stated issue, the court concluded that the record failed to demonstrate that there were no material facts in dispute. Accordingly, as to that issue both motions were, without prejudice, denied. The rulings just described were confirmed by written order filed that date.

Following the conclusion of additional discovery directed to the unresolved issue, defendant has again moved for summary judgment, asserting that, on the material

---

1. A right to additional relief by way of an order directed to the Secretary of the Air Force pursu- ant to 28 U.S.C. § 1491(a)(2) (1982) is also claimed.

facts concerning which there is now no genuine dispute, defendant is entitled to judgment as a matter of law on the excepted issue.[2] Plaintiff has filed an opposition to that motion, to which defendant has responded, and defendant's motion is accordingly ready for ruling. For the reasons set forth below, defendant's position is valid, and its motion for summary judgment is therefore granted.

I

Plaintiff served on active duty as a commissioned officer in the United States Air Force continuously from June 19, 1967, to January 31, 1980. On the latter date, he was released from active duty as a Reserve commissioned officer as a result of having twice failed of selection for promotion to the temporary grade of major. Thereafter, he enlisted in the United States Air Force, and is now serving on active duty as a staff sergeant.

a. The first failure of selection.

On June 5, 1978 a Central Temporary Major Selection Board ("the 1978 Board") convened to consider and recommend active duty Air Force officers, both Regular and Reserve, serving in the grade of captain for promotion to the temporary grade of major. The 1978 Board, appointed and convened pursuant to paragraph 2–2a, Air Force Regulation ("AFR") 36–89, "Temporary Promotion of Commissioned Officers," October 21, 1977, included 45 members, 39 of whom were Regular Air Force officers, and six of whom were Reserves.[3] Plaintiff, a Reserve line officer of the Air Force, was eligible to be considered by the 1978

Board for promotion to the temporary grade of major.

The 1978 Board considered 5,863 line officers for promotion to the temporary grade of major. Of that number, 3,671 were Regulars, and 2,192 were Reserves. Some 2,410 Regular line officers, and 1,139 Reserve line officers, were recommended for promotion to that grade. Plaintiff was not among those so recommended.

Of the 45 members of the 1978 Board, 30 evaluated and rated line officers competing with plaintiff for promotion in the selection process. Six of the 30, or 20 per cent, were Reserves. The 1978 Board assigned certain of its members to subdivisions, or panels, forming six such panels to evaluate and score the records of Air Force line officer candidates for selection. Each such panel had five members, one of whom was a Reserve.[4] No member served on more than one panel. The five-member panel that considered plaintiff did not assign to his record of performance a score which would qualify him for promotion to temporary major.

On May 8, 1976, General B.F. Davis, then a major general and Director, Air Force Directorate of Personnel Plans ("AF/DPX"), issued what he terms a "written directive" captioned "Use of Reserve Officers on Selection Boards." In substance, the May 8, 1976, "directive" (in General Davis' words) "required, for upcoming temporary major and lieutenant colonel boards, reserve representation in approximately the same proportion as reservists in the pool of candidates to be considered."[5] In doing so, General Davis

---

2. Defendant's motion is supported by a recent affidavit, and by a number of documents not heretofore provided. Plaintiff's brief in opposition (which also presents new materials) is similarly limited to the issue of the propriety of his 1978 failure of selection for promotion.

3. Paragraph 2–3c, AFR 36–89, provided that "If Reserve of the Air Force officers are considered [by a selection board, the selection board will] include an appropriate number of Reserve of the Air Force officers." See also 10 U.S.C. § 266(a) (1976); Department of Defense Instruction (DoD Instr.) 1205.4, June 23, 1959.

4. The records of other than line Air Force Reserve officer candidates for promotion were probably evaluated and scored by a panel or panels which did not include any Reserve members. Each of the panels that considered line officers included a Reserve member, however, and plaintiff was a line officer.

5. The May 8, 1976, "directive" had two attachments. The first, captioned "SELECTION BOARD POLICY," provided in part as follows:

"Reserve board member requirements

\* \* \* \* \* \*

acted on advice that "such a formula, though not required by law, would satisfy legal mandates." In terms of the membership of, and the total number of officers considered by, the 1978 Board for promotion to the temporary grade of major, the following numbers and percentages apply:

| Membership | Candidates |
| --- | --- |
| 45 | 6,235 |
| Reserve/Regular | Reserve/Regular |
| 6 (13%)/39 (87%) | 2,354 (38%)/3,881 (62%) |

Viewed in terms of Air Force line officers only, the results differ slightly, as follows:

| Membership | Candidates |
| --- | --- |
| 30 | 5,863 |
| Reserve/Regular | Reserve/Regular |
| 6 (20%)/24 (80%) [6] | 2,192 (37%)/3,671 (63%) |

When this case came before the court for decision in 1984, the record tended to indicate that the May 8, 1976, "directive" was in force when the 1978 Board was appointed and convened. All that the record then contained on the subject was a document signed by Major General Harry A. Morris, (then AF/DPX), and dated June 13, 1978 (after the 1978 Board had convened) promulgating a "Selection Board Policy" [7] which "supersedes previous policy guidance." The "new" policy was that (with an exception not here relevant) each temporary selection board should have "One Re-

serve officer per Line panel for all boards * * *."

Defendant has appended to its renewed motion for summary judgment a May 9, 1985, declaration by General Davis (who is now commander in chief of the Strategic Air Command and director of the Joint Strategic Target Planning Staff). In that declaration, General Davis states that as a result of an April 13, 1978, briefing [8], he not only approved a proposed "formula of one reservist per line panel for the then upcoming 1978 temporary majors' board" but also "personally examined and approved the list of eventual nominees for membership on that board prior to the publication of its convening order."

General Davis' declaration affirmatively indicates that his said decision, made prior to June 1, 1978 (when a Letter of Instructions formally appointing the 1978 selection board was promulgated), was "ultimately embodied in a written directive issued on 13 June 1978 * * *" by General Morris, then serving under General Davis as AF/DPX. That 1978 "directive" is described above. In a motion to terminate plaintiff's additional discovery, filed May 13, 1985, counsel for plaintiff indicated that he had "satisfied himself that General Davis accepted" a proposal that "the 1978 board to select temporary majors should contain one re-

---

T O–4/T O–5 [temporary major/temporary lieutenant colonel]: approximately the same proportion as Reserve/Regular eligibles being considered by the board"

The second, captioned "ACTIONS REQUIRED," provided in part as follows:

"Achieve 'increased participation' by providing the following number of Reserve O–6s as board members (DPMA):

\* \* \* \* \* \*

T O–4/O–5 board: Reserve board members in approximately same proportion as Reserve/Regular eligibles being considered by the board"

6. Each 5-member panel considering line officers also had one Reserve member, and a 20%/80% Reserve/Regular membership ratio.

7. General Morris' June 13, 1978, memorandum also alluded to "recent discussions regarding appropriate Reserve membership on selection boards."

8. In April 1978 General Davis, who had by then been promoted to lieutenant general, was serving as the Deputy Chief of Staff, Personnel ("AF/DP"), at Headquarters, United States Air Force, Washington, D.C. In that position he was responsible for, among other things, "planning, directing and supervising all Air Force military personnel activities, including the composition and functioning of all promotion boards within the framework of applicable statutes and regulations." His subordinate, the Air Force Director of Personnel Plans (AF/DPX), then had "authority to develop personnel policies and plans in support of military personnel activities, including the promotion process, for which AF/DP is the office of primary responsibility." The mechanics of the selection boards themselves were administered by other subordinates of AF/DP. See Air Force Regulation 23–33, 28 June 1976.

serve officer (of five) on each panel," and that "the Secretary of the Air Force, after receiving a proper briefing, approved that action * * *." [9]

b. The second failure of selection.

On June 4, 1979, a Central Temporary Major Selection Board ("the 1979 Board") convened to consider and recommend active duty Air Force officers, both Regular and Reserve, serving in the grade of captain for promotion to the temporary grade of major. That Board, appointed and convened pursuant to AFR 36–89, October 21, 1977, included 45 members, 39 of whom were Regular Air Force officers, and 6 of whom were Reserves. Plaintiff was eligible to be considered by the 1979 Board for promotion to the temporary grade of major.

The 1979 Board considered 4,678 line officers for promotion to the temporary grade of major. Of that number 2,982 were Regulars, and 1,696 were Reserves. Some 2,068 Regulars, and 856 Reserves, were recommended for promotion to that grade. Plaintiff was not among those so recommended.

Of the 45 members of the 1979 Board, 30 evaluated and rated line officers competing with plaintiff for promotion in the selection process. Six of the 30, or 20 per cent, were Reserves.[10] The 1979 Board operated in subdivisions, or panels (with each panel which considered line Air Force officers having one Reserve member) substantially as had the 1978 Board. The five-member panel that considered plaintiff did not assign to his record of performance a score which would qualify him for promotion to temporary major. That panel complied fully with the terms of General Morris' June 13, 1978, "directive" referred to above.

As noted at the outset, plaintiff was involuntarily released from active duty as a captain January 31, 1980. This action, challenging the legality of his separation, was filed September 21, 1982.

II

In moving for partial summary judgment in 1984, plaintiff contended, *inter alia,* that the 1978 and 1979 Boards that failed to select him for promotion to the temporary grade of major did not "include an appropriate number of Reserves * * *," in violation of the requirements of 10 U.S.C. § 266(a);[11] that each five-member panel formed from the membership of the 1978 and 1979 Boards which evaluated and scored plaintiff's record was itself a "Board," within the meaning of 10 U.S.C. § 266(a), and did not "include an appropriate number of Reserves * * *"; that the composition of the 1978 Board was in violation of General Davis' May 8, 1976, "directive"; that plaintiff was not considered "by the 1978 and 1979 boards * * * on 'a fair and equitable basis' as that phrase * * *" appeared in 10 U.S.C. § 8442; that "laws applying to both Regulars and Reserves were not administered without discrimination", in violation of the terms of 10 U.S.C. § 277; and that an actionable breach of 10 U.S.C. § 278, obligating the Secretary of Defense to require the "complete and current dissemination * * * of information of interest to the reserve components" occurred. In consequence, plaintiff then argued, his release from active duty as a commissioned officer in 1980 was unlawful.

■ As held in the bench ruling and order of November 23, 1984, herein, plain-

---

9. On brief, however, plaintiff advances arguments (discussed below) inconsistent with that concession.

10. The Reserve/Regular ratio of members evaluating line officers was 20%/80%. The Reserve/Regular ratio of line officer candidates was 36%/64%. In terms of Reserve/Regular total board membership, and total candidates, the ratios were 13%/87%, and 36%/64%, respectively.

11. All statutory citations in Section II are to the provisions of law in effect in 1978 and 1979. Section 266(a) was amended in 1980 to provide that selection boards should include at least one Reserve member. See *Bockoven v. Marsh,* 727 F.2d 1558, 1564 (Fed.Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984).

tiff neither made a showing of any denial of rights under 10 U.S.C. § 8442 nor demonstrated any vitiating (or other) impropriety in the temporary promotion process *per se* (as distinguished from the separate issues of the legality of the composition of the 1978 and 1979 Boards). Nor did he establish a breach of either 10 U.S.C. § 277, requiring that laws applying to both Regulars and Reserves be applied without discrimination, or 10 U.S.C. § 278, concerning dissemination of information of interest to the reserve components. *Cf. Foster v. United States,* 733 F.2d 88, 90–91 (Fed.Cir. 1984).

■ As the said bench ruling and order further reflect, plaintiff also failed to persuade that his 1979 failure of selection for promotion to the temporary grade of major was flawed, from the standpoint of either selection board composition or otherwise. *Bockoven v. Marsh,* 727 F.2d 1558 (Fed. Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Palmer v. United States,* 6 Cl.Ct. 541 (1984).

In this connection, whether the 1979 Board be viewed as consisting of 45 members (including six Reserves), or of only 30 line officer members (including six Reserves), the composition of that Board cannot be held faulty under the standards enunciated in *Bockoven.* And, whether or not the five-member line officer panel of the 1979 Board that considered plaintiff could properly be held to be a "board," within the meaning of 10 U.S.C. § 266(a), need not be explored at any length. *Cf.* Paragraph 2–7, AFR 36–89, October 21, 1977. Assuming so, *arguendo,* the five-member "board" included one Reserve member, complied fully with the June 13, 1978, "directive," and therefore in any event included an "appropriate number of Reserves * * *."

■ The remaining issue respecting the legality *vel non* of plaintiff's failure of

selection by the 1978 Board, not decided in 1984 because the record then before the court failed to demonstrate that there were no material facts concerning that issue in dispute, is, in light of the additional factual data now available, also to be resolved against plaintiff.

Given General Davis' responsibilities as AF/DPX in the area of military personnel activities, including the promotion process, at the time, to categorize his May 8, 1976, memorandum concerning the use of Reserve officers on selection boards as a "directive" (as do both plaintiff and General Davis) is far from implausible. See *Payne v. Block,* 721 F.2d 741, 742–43 (11th Cir. 1983).[12] See also *Piccone v. United States,* 407 F.2d 866, 872, 186 Ct.Cl. 752 (1969); *cf. Dunphy v. United States,* 208 Ct.Cl. 986, 988–89, 529 F.2d 532 (1975); *Lockheed Aircraft Corp. v. United States,* 426 F.2d 322, 327, 192 Ct.Cl. 36 (1970). The language employed by General Davis has mandatory, not merely hortatory, overtones.

In any event, it is clear that that directive—while it remained in effect—effectively implemented 10 U.S.C. § 266(a) requiring that each selection board "convened for the * * * promotion * * * of Reserves shall include an appropriate number of Reserves * * *," and DoD Instr. 1205.4, June 23, 1959, in pertinent effect requiring that the Secretary of the Air Force provide in the membership of such boards, if in the exercise of considerable discretion, "a fair and adequate representation of members from the reserve components." See *Bockoven,* 727 F.2d at 1564–65.

General Davis' May 8, 1976, "directive" had, however, been effectively revoked well prior to the convening of the 1978 Board. As AF/DP General Davis not only duly approved in advance the composition of the 1978 Board from the standpoint of inclusion of "an appropriate number of Re-

---

12. The judgment in this case was vacated and the case remanded for further consideration in light of *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). *Block v. Payne,* — U.S. —, 105 S.Ct. 65, 83 L.Ed.2d 15 (1984). On remand, the Eleventh Circuit adhered to and reinstated its earlier opinion. *Payne v. Block,* 751 F.2d 1191 (11th Cir.1985).

serves * * *" (and "fair and adequate representation of members from the reserve components") but also personally examined and approved the list of eventual nominees for membership on the 1978 Board prior to the publication of its convening order. No reason why General Davis could not supersede the earlier "directive" has been suggested, or appears. And, at least as far as plaintiff is concerned, no statute or regulation, nor the by-then superseded 1976 "directive," was violated by the manner in which the 1978 Board was constituted.

In an effort to persuade the court that the 1978 Board did not include an appropriate number of Reserve members, as prescribed by the Secretary, plaintiff advances a number of arguments. On careful analysis, none of them withstands scrutiny.

First, plaintiff asserts that General Morris' June 13, 1978, directive failed to satisfy the requirements of 10 U.S.C. § 266(a) "because it did not provide for any Reserve officer on the non-line panels." As noted above in connection with the 1979 Board, however, whether the 1978 Board, be viewed as consisting of 45 (or of only 30 line officer) members, six of whom were Reserves, or as a number of separate five-member "boards," *plaintiff* was considered by a "board" which did "include an appropriate number of Reserves * * *." His contention otherwise lacks any merit.

Second, plaintiff argues that General Morris' "directive" did not become effective until June 13, 1978, after the 1978 Board had been appointed (and convened), and, by implication, that General Davis' May 8, 1976, "directive" remained in force to that date.[13] As held hereinabove, however, General Davis, by decisions made well prior to the appointment and convening of the 1978 Board, himself effectively and lawfully superseded his own 1976 "directive."[14] General Morris' June 13, 1978 "directive" did no more than memorialize those earlier decisions by his superior, General Davis.

Finally, plaintiff's reliance upon 10 U.S.C. § 8012, which (among other things) authorized the Secretary of the Air Force in 1978 to "assign such of his functions, powers and duties as he considers appropriate to the Under Secretary of the Air Force and to the Assistant Secretaries of the Air Force" is misplaced. The argument on brief apparently is that the duty "of prescribing the number of reserves to be contained on temporary promotion boards" either could not be, or has not been shown to have been, within General Davis' area of responsibility as AF/DP.

The short answer is that General Davis' 1985 declaration affirmatively reflects that as AF/DP he was the officer primarily responsible for (among other things) "planning, directing, and supervising all Air Force military personnel activities, *including the composition and functioning of all promotion boards* within the framework of applicable statutes and regulations" (emphasis added). Nothing in 10 U.S.C. § 8012, or any other statute, instruction or regulation of which the court is aware, indicates or even suggests that his activities in that area were in any way beyond his authority or unlawful.[15] Indeed, the materials appended to defendant's reply brief on this point forcefully demonstrate to the contrary.

In light of the foregoing, defendant's motion for summary judgment is granted. In conformity with the court's order of November 23, 1984, and this opinion, plain-

---

13. Plaintiff's May 13, 1985, "Motion to Terminate Plaintiff's Additional Discovery," mentioned hereinabove, is scarcely consistent with this line of argument.

14. Plaintiff's assertion that General Davis "should have included (but did not include) the *time* when each of these decisions occurred" (emphasis in original) is specious.

15. See *Crispino v. United States,* 3 Cl.Ct. 306, 312 (1983) and cases there cited (a presumption, albeit a rebuttable one, of regularity, correctness, and good faith attaches to administrative actions, including the actions of military administrators). Mere assertions of counsel on brief neither rebut a sworn declaration nor raise any triable issues of fact. *Udis v. United States,* 7 Cl.Ct. 379, 383 (1985); *Garcia v. United States,* 123 Ct.Cl. 722, 733, 108 F.Supp. 608 (1952).

tiff's complaint will be dismissed pursuant to RUSCC 58.