**Thomas C. MURRAY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 654–80C.**

United States Claims Court.

Oct. 31, 1985.

Jack E. Carter, Fayetteville, N.C., attorney for plaintiff.

Hillary A. Stern, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

### MOODY R. TIDWELL, III, Judge:

Plaintiff, a commissioned officer in the United States Army Reserve on active duty, was twice non-selected by Army Lieutenant Colonel Selection Boards for temporary promotion from Major to temporary Lieutenant Colonel, and subsequently not selected by a specially commissioned Selective Continuation Board which could have retained him on active duty notwithstanding his two consecutive non-selections. Plaintiff accordingly was involuntarily released from active duty in accordance with Army regulations. Plaintiff then sought redress through the Army Board for the Correction of Military Records (ABCMR), to no avail. The present suit arises out of allegations charging the ABCMR with failing to properly consider the circumstances surrounding plaintiff's involuntary separation, including its refusal to take action(s) which arguably would have enhanced plaintiff's chances for reinstatement and back pay. The case is before this court on Cross-Motions for Summary Judgment. After consideration of the parties' briefs and oral argument, the court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

### FACTS

Plaintiff, Thomas C. Murray, entered the United States Army Reserve on September 17, 1962 as a Second Lieutenant and remained on active duty for almost 18 years as a commissioned officer until he reached the grade of Major. He eventually became eligible to be considered for temporary promotion to Lieutenant Colonel.

Procedurally, Army reserve officers on active duty are considered for temporary promotion by Selection Boards after serving a stated minimum time in their rank. If an officer is not recommended for promotion by the first Selection Board, he or she is considered again at the next constituted Selection Board. In this instance the first Selection Board to consider plaintiff convened on July 13, 1978. The second commenced on June 6, 1979. Plaintiff and 128 other reserve Majors were non-selected by both Selection Boards thereby requiring their involuntary release from active duty. Under normal circumstances plaintiff would have been released within 180 days following non-selection by the 1979 Selection Board. 10 U.S.C. § 681(a), Army Regulations 624–100 and 635–100. However, due to projected personnel shortages in cer-

tain specialty skill areas a third step was added to the screening process.[1]

The Secretary of the Army, in conjunction with the Congress [2] created, on February 6, 1980, a program to review twice non-selected Army Reserve Captains and Majors through a specially commissioned Selective Continuation Board (SCB). Among other things, the SCB was given the authority by the Secretary of the Army to negate the effect of the two consecutive promotion non-selections by the 1978 and 1979 Selection Boards, by recommending the retention of some of those officers with certain specialty skills for which the Army projected a need [3] over the next few years. The significant difference between the 1978 and 1979 temporary promotion Selection Boards and the 1980 SCB was that the purpose of the former was to evaluate some of the candidates for promotion. The purpose of the latter was to evaluate some of the same candidates for retention in the Army at their present grade. The Secretary's instructions empowered the SCB to retain up to 100% of the twice non-selected officers in "underaligned" specialty skills who were considered "fully qualified." The SCB was also empowered to retain up to 50% of twice non-selected officers with skills which were deemed "marginally aligned" and up to 10% of twice passed-over officers with skills which were deemed "fully aligned." Those officers selected for retention in the latter two categories were to be "best qualified" as compared to their peers.

Knowing that his specialty skills, 71 and 91, could not guarantee acceptance for active duty retention, plaintiff, after non-selection by the 1979 Selection Board but before the SCB met, attempted through Army procedures to be awarded specialty skill 92 vice skill 71 or 91. Knowing the SCB could accept all officers under evaluation with underaligned specialty skills, such as skill 92, plaintiff obviously attempted to put himself into a more desirable position for retention. Plaintiff's request had merit in that at one time in his military career he had been actually assigned to a specialty skill 92 position.[4] Unfortunately for plaintiff, his request was "returned without action" on February 29, 1980. He was also told in the February 29 letter that in the interest of fairness to all the SCB would be furnished only with the same information that was made available to the 1979 Selection Board, but that the SCB would be told that "should the board [the SCB] determine that your overall manner of performance and previous experience warrants [sic] continuation in a specialty other than one of your currently designated specialties, you may be recommended for continuation and [a] ... specialty change."

On March 3, 1980 the SCB met to evaluate those reserve Majors who wished to be retained on active duty, including plaintiff. The SCB evaluated plaintiff in light of his record which reflected a 71 specialty (aviation material management), classified as a "fully aligned" skill, and a 91 specialty (maintenance management), classified as a "marginally aligned" skill. The SCB chose

---

1. Among other things the third step included an active duty extension for twice passed-over reserve officers, if they wanted such an extension, until the additional evaluation could be completed. Plaintiff elected to, and was permitted to continue on active duty pending the outcome of the third-step review.

2. Congressional Committee Report, H.R. Rep. No. 696, 96th Cong., 1st Sess. 7 (1979). On December 11, 1979 (subsequent to plaintiff's second non-selection for promotion), a joint Congressional Conference Committee recommended that the Armed Services retain, in grade, Captains and Majors who have specialty skills in the projected shortage areas.

3. The Secretary of the Army and personnel specialists within his command identified the specialty skills that would be needed and the number of twice non-selected officers under consideration that should be retained.

4. Specialty skill 92 is entitled "Material/Services." There is a procedure whereby officers can request different specialty skills from those recorded in their Official Military Personnel Files. Army regulations provide that if an officer has served the required minimum amount of time and performed the listed duties, he is eligible for award of that specialty skill. Plaintiff alleged that he met the "time/duty" standards for specialty skill 92 prior to 1979.

not to retain plaintiff in either of his formally designated specialties nor in any other skill, such as specialty 92. On June 20, 1980 plaintiff was involuntarily released from active duty.

On December 9, 1980 plaintiff filed suit in the United States Court of Claims. On October 9, 1981, in accordance with Court of Claims Rule 149, a joint motion was made to remand the case to the ABCMR and on October 14, 1981 the motion was granted. Plaintiff brought two principal claims before the ABCMR premised on the allegation that various Army personnel and organizations had acted in an arbitrary and capricious manner which ultimately led to his involuntary release. He first asserted that the 1978 and 1979 Selection Boards, and the 1980 SCB, failed to contain an "appropriate number of reserve officers as members," in violation of 10 U.S.C. § 266(a), as that provision existed at the time. Plaintiff also claimed that the failure of the Army to award him specialty skill 92 and of the SCB to evaluate him without specific reference to his ability to perform under skill 92 was arbitrary and capricious.

On December 29, 1982 the ABCMR denied all of plaintiff's allegations. In particular, it found that all three Boards were properly constituted, i.e., a proper number of reserve officers sat on each one, that the Army was within its rights to refuse to award plaintiff specialty skill 92 in the circumstances and that the SCB properly evaluated plaintiff using the information given the SCB in his Official Military Personnel Record and in accordance with its extensive "Charter" from the Secretary of the Army. Pursuant to the Remand Order, the case was referred back to this court. On September 16, 1982 this court again acted upon the request of both parties and further suspended proceedings for a "reasonable" period of time until an Opinion could be filed in a case then pending before the United States Court of Appeals for the Federal Circuit which both parties felt would have a significant impact upon the case at bar. The anticipated Opinion was handed down February 23, 1984 entitled *Bockoven v. Marsh*, 727 F.2d 1558 (Fed.Cir.

1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984).

## DISCUSSION

On August 30, 1984, plaintiff filed a Motion for Summary Judgment in this court. Defendant filed its Response and Cross-Motion for Summary Judgment on October 15, 1984. In order to grant a Motion for Summary Judgment there must be no genuine issue as to any material fact. RUSCC 56(c). *See also South Louisiana Grain Service, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982); *Technograph Printed Circuits, Ltd. v. United States*, 178 Ct.Cl. 543, 560, 372 F.2d 969, 980 (1967). Moreover, since this is an appeal from an ABCMR ruling pertaining to a military personnel matter, this court has a very limited scope of review. *Bockoven v. Marsh*, 727 F.2d 1558, 1566 (Fed.Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984) (citing *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 *reh'g denied*, 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953)). Therefore, this court can only find for the plaintiff if the decision rendered by the ABCMR was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Doyle v. United States*, 220 Ct.Cl. 285, 290, 599 F.2d 984, 988, *modified*, 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Sanders v. United States*, 219 Ct.Cl. 285, 290, 594 F.2d 804, 806 (1979).

Oral argument on the cross-motions was heard on August 13, 1985. Plaintiff, in light of *Bockoven*, for all practical purposes withdrew that portion of his complaint challenging the ratio of reservists to regular Army officers who sat on the 1978 and 1979 Selection Boards. Plaintiff also stated that if the court followed *Bockoven*, defendant must also prevail on the same representation challenge he had directed at the SCB.

Before this court, plaintiff repeated the two charges made against the SCB discussed above, and also added additional

counts alleging that the ABCMR also erred in not recognizing that plaintiff was capable of performing specialty skill 92, in not requiring explicit documentation of that fact to be placed in his personnel record, and in refusing to amend his personnel records so as to permit him to be retained on active duty.

Defendant in its principle argument chose not to join issue directly with plaintiff, but argued instead that the suit was filed primarily against the SCB and that the court was without jurisdiction to hear the case because there is no provision of law or regulation that would allow plaintiff monetary damages as a consequence of any possible action of the SCB. Defendant contended that this is not like a wrongful separation claim where a plaintiff could be entitled to all of the benefits of his or her position until legally disqualified. Defendant also contended that because the SCB failed to select plaintiff for retention and then released him from active duty, this court lacked authority over the Department of the Army to order plaintiff reinstated into his position since the basic grounds for his initial disqualification, *i.e.* the two promotion non-selections, still existed. Furthermore, defendant claimed that this entire matter, especially the assignment of skills, is exclusively an internal Army matter and not appropriate for judicial review. Defendant also argued that since plaintiff's claim pertained to actions by the SCB and, therefore, not within the jurisdiction of the court, there was no need to get into "involved discussions" about the decision to not award specialty skill 92 to plaintiff.

■ Defendant's jurisdictional argument is fatally flawed in several respects. Section 1491, as amended, of Title 28, United States Code, the Tucker Act, gives the United States Claims Court jurisdiction over

> any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliq-

uidated damages in cases not sounding in tort.

However, this statute does not in itself create any substantive right which is enforceable against the United States. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). In order to successfully bring an action in this court a claimant must assert a substantive right enforceable against the United States conferred by a money-mandating provision from at least one of the sources identified in the Tucker Act. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Price v. United States,* 224 Ct.Cl. 58, 61, 621 F.2d 418, 420 (1980). As the Court of Claims explained in *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967):

> Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under section 1491, although some separate general principle—arising, for example, from tort law—might lead to a remedy in another forum or under some special relief provision.

*Id.* at 607, 372 F.2d at 1009.

The Supreme Court spoke recently on this point in *Army & Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), holding that the Tucker Act provides a remedy only where damage claims against the United States have been authorized. *Id.* at 739, 102 S.Ct. at 2124.

■ Defendant carefully attempted to direct its written and oral arguments at several relatively novel concepts, *i.e.*, that the court was without jurisdiction to hear the claims, that the Secretary of the Army had no authority to effectuate the decisions of the SCB which he had created and that its decisions were therefor a nullity, and that the court in reality reviewed the actions of the SCB and the 1978 and 1979 Selection Boards, but not the ABCMR. Defendant's

attempt to lead the court from the real issues of the case is disingenuous. The proper focus of this court is to review the actions of the ABCMR as that board addressed plaintiff's claims against the two Selection Boards, the SCB and the actions of the Army that plaintiff challenged. For defendant to argue that the Secretary of the Army, acting through his Correction Board, has no authority to correct errors, remove an injustice, pay money owed (all as alleged here) is at the least, interesting. The court has reviewed the actions of the ABCMR for well over two decades with no complaint from Congress. *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). "[T]he fact that this court has the jurisdiction to review actions of military correction boards is not disputable." *Id.*, at 300, 594 F.2d at 812, and cases cited therein.

Defendant contends that this situation is analogous to the claim presented in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In *Testan* a government employee claimed that he was improperly classified at level GS–13 instead of GS–14. He sued for back pay claiming the difference between the GS–13 and GS–14 pay as damages. The Supreme Court held that this court lacked jurisdiction under the Tucker Act because no statute or Constitutional provision authorized a claim for monetary damages for a job one does not have. The Court stated, "[t]he established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." *Testan*, 424 U.S. at 402, 96 S.Ct. at 955. The Supreme Court in *Army & Air Force Exchange Service v. Sheehan*, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), interpreted *Testan* to stand for the proposition that the Tucker Act did not confer jurisdiction upon this court over a government employee or former government employee who claimed entitlement to reclassification at a higher grade, to which he had never been properly appointed. *Id.*

at 738, 102 S.Ct. at 2124. While this court unhesitatingly follows the jurisdictional rules established in *Testan* and its progeny when applicable, it finds that the present case is readily distinguishable on the facts.

■ Plaintiff in *Testan* sued for a position to which he had never been appointed. The present case is inapposite. Plaintiff sought, first from the SCB, later from the ABCMR and now this court, reinstatement and back pay to a position to which he had been duly appointed and which he alleges was taken from him contrary to law and regulation by the Department of the Army. This factual difference, standing alone, takes the case out of the broad sweep of *Testan*. The court finds *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979), to be more persuasive in resolving the jurisdictional question. In *Sanders*, plaintiff was involuntarily separated from the service because he had been non-selected six times for promotion from Captain to Major. He filed an action with the Air Force Board for the Correction of Military Records to have his personnel record corrected to represent his actual achievements and to remove several documents placed in the record improperly. The Court of Claims in *Sanders*, decided three years after *Testan*, found jurisdiction based on plaintiff's allegation that he had been involuntarily released because of improper actions by defendant. *Sanders* makes it clear that a claim by a former serviceman that he was improperly separated from a military service grants jurisdiction to this court to review the matter. *Id.* 219 Ct.Cl. at 300, 594 F.2d at 812. In conjunction with this jurisdiction the court, if necessary, may correct plaintiff's records to show that he was qualified to perform under skill 92, direct his reinstatement and to grant, in effect, back pay to recompense him for his "civilian" time.[5] Plaintiff also argued that the Army reserve officer rep-

---

**5.** Section 204 of Title 37 of the United States Code confers upon an officer the pay of the rank he was appointed to up until he is properly separated from the service. Section 1552 of Title 10 of the United States Code provides for reimbursement of money damages stemming from improper separations.

resentation on the 1978 and 1979 [6] Selection Boards in question here and the SCB was unbalanced, contrary to 10 U.S.C. § 266(a), and that the decisions of those Boards are a nullity. The court disagrees in the light of *Bockoven v. Marsh*, 727 F.2d 1558 (Fed. Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984), where the United States Court of Appeals for the Federal Circuit considered, at length, the argument that 10 U.S.C. § 266(a)

> required the Secretary of the Army to appoint to selection boards the number of reservists that was proportionately equal to the number of reservists the board would consider. To the contrary, we conclude that the statute gave the Secretary substantial discretion to determine what constitutes an 'appropriate number' of reservists and that the appellants have not shown that the number of reservists on the 1976 boards (there involved) was not 'appropriate.'

*Id.* at 1564.

■ Plaintiff questioned at oral argument whether *Bockoven* applied only to the two promotion Selection Boards and not the SCB. The court is of the opinion that it does apply to the SCB, even though it is not necessary to address the issue to decide the case. Moreover, the court is satisfied that factually the SCB met the standard, *i.e.,* in this instance the SCB considered 129 officers, all of whom were reservists. Six Lieutenant Colonels served on the SCB: three regular Army officers and three reserve Army officers. The court also looked to the purpose of reserve representation on the Selection Boards when reserve officers are under consideration which is to minimize discrimination by regular officers against reservists on active duty. *See Bockoven v. Marsh*, 727 F.2d 1558, 1564–65 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984). In this instance, since all of the officers under consideration were reserve officers it stretches the imagination to think that dis-

crimination could exist. In light of *Bockoven,* the prior approval of the 1979 Selection Board in *Palmer v. United States*, 6 Cl.Ct. 541 (1984) and the constitution of the SCB, the court finds no merit to plaintiff's position.

■ Plaintiff contends that the failure of the Army to award him specialty skill 92 was arbitrary and capricious and that the refusal of the ABCMR to direct a specialty skill change to 92 was also arbitrary and capricious. However, all of these issues, and therefore all counts in the Complaint, with the exception of plaintiff's present challenge in this court to the sufficiency of the ABCMR decision itself, were raised by plaintiff before the ABCMR. Thus, the only issue to be considered by this court is whether the ABCMR's decision was unsupported by substantial evidence, or was arbitrary, capricious, or otherwise contrary to law. As the Court of Claims stated in *Sanders,* 219 Ct.Cl. 285, 594 F.2d 804 (1979):

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due. (Citations omitted.)

*Id.* at 298, 594 F.2d at 811.

■ The court finds that the ABCMR decision was correct. The Army, for reasons of fairness, "froze" the personnel records of all twice non-selected officers who were considered by the SCB. As noted in its opinion, the ABCMR found that the Army, in an effort to insure that all of the twice non-selected officers would be treated equally, and on a common basis, gave identical records to the SCB as were

---

**6.** The 1979 reserve Lieutenant Colonel Selection Board was specifically approved by this court in

*Palmer v. United States,* 6 Cl.Ct. 541 (1984).

given to the 1979 Selection Board that non-selected the same reservists for promotion for the second time. The ABCMR concluded, that under this rational policy, the Army's denial of plaintiff's request to change his personnel record by awarding him specialty skill 92 prior to the convening of the 1980 SCB was not arbitrary, or capricious, or in bad faith, or contrary to law or regulation. The court also finds that the SCB could have granted plaintiff's retention in the specialty skill he sought or, for that matter, any specialty skill the SCB determined his overall performance and experience warranted.[7]

■ The court agrees with defendant that it is readily apparent from the ABCMR's opinion that the Army: (1) treated plaintiff no differently than other officers similarly situated; (2) prepared plaintiff's Official Military Personnel Record before the SCB met in as complete and proper a form as required by law, regulation and logic; and (3) could have retained plaintiff in the specialty he desired without any formal change in his skill specialties if it found his previous experience warranted it. While it would have been more beneficial for plaintiff to have been formally awarded specialty skill 92 so that the SCB would have readily known of his qualifications in that area the ABCMR found that the Department of the Army had acceptable reasons for following the procedure that it did. The ABCMR found plaintiff's contentions to be without merit and the court finds that ABCMR did not act arbitrarily, capriciously or contrary to law. That is all that is required for defendant to prevail on the merits. Furthermore, the court finds that

the SCB procedures followed by the Army were not in violation of the orders of the Secretary of the Army.[8]

Both parties have made other minor arguments in support of their respective positions, mostly without merit, and which have no impact upon the final outcome of the case in view of this court's holdings on the principal issues and, therefore, need not be addressed.

## CONCLUSION

The court concludes that defendant has failed to present evidence that this court lacks jurisdiction to hear this case, and that plaintiff has failed to offer sufficient evidence to overcome the strong presumption that the ABCMR's decision was correct under the standards set out in *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). Therefore, plaintiff's contention that the ABCMR acted in an arbitrary or capricious manner, or contrary to law must fail. In reaching this conclusion the court also finds that no genuine issue of material fact existed.

Accordingly, the court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. The clerk of the court is directed to dismiss the Complaint.

IT IS SO ORDERED.

---

7. The court takes notice of the veracity of this statement by looking to "Stipulation of Fact" No. 15 which verifies that one of the reserve Majors was selected by the SCB for retention "in specialty skill 92 ... even though his designated skills were 12 (Armor) and 28 (Training Management)."

8. As indicated, 129 officers were reviewed by the SCB, as ordered by the Secretary of the Army, but the Army added three additional Majors to the list who were part of the "Cuban

Brigade." These three officers were invited by the Army to participate in the Bay of Pigs invasion and promised that afterwards they would be inducted into the United States Army as officers and be retained for 20 years. This action was separate from the general purpose of the SCB and did not constitute a violation of the orders of the Secretary, especially in any way that could have affected plaintiff. It is not an issue in this case.